975 P.2d 142

Teresa PETRUSEK, Plaintiff–Appellant,

v.

FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 97–0554.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 22, 1998.

Review Denied April 12, 1999.

Dillingham & Cross, P.L.C. by John L. Dillingham and Thomas C. Wilmer, Phoenix, for Plaintiff–Appellant.

Broening Oberg Woods Wilson & Cass by James R. Broening and David S. Shughart, Phoenix, for Defendant–Appellee.

OPINION

RYAN, Judge.

¶ 1 Teresa Petrusek appeals from the trial court's grant of summary judgment to Farmers Insurance Company of Arizona ("Farmers"). The court declined to impute underinsured motorist ("UIM") coverage into Petrusek's employer's liability coverage policy for vehicles owned by employees that were used in the course of the company's business. Because the policy does not provide primary motor vehicle insurance, we hold that it falls within the exception to the requirement that insurers provide written notice of the availability of UIM coverage. Ariz.Rev.Stat. Ann. ("A.R.S.") 20–259.01(K). We therefore affirm the trial court's judgment.

I.

¶ 2 The facts are largely undisputed. Petrusek was injured in an automobile accident on September 7, 1995, when her vehicle collided with one driven by Cory Stoute. At the time of the accident, Petrusek was driving her own car, but was acting in the course of her employment by traveling to purchase supplies for her employer, The Osselaer Company ("Osselaer"). Petrusek's personal automobile coverage had lapsed, and Stoute's insurance was insufficient to cover her injuries.

¶ 3 Osselaer purchased a Business Auto Coverage policy through Farmers, apparently in connection with a general commercial liability policy (the "Osselaer Policy"). Coverage under the Osselaer Policy was effective beginning June 5, 1995. Farmers did not provide Osselaer notice of the availability of UIM coverage in the amount of the policy limits, and Osselaer did not purchase UIM coverage in connection with the policy.

¶ 4 The Osselaer Policy provided coverage for only two types of "covered autos," identified in the policy by coverage symbols "8" and "9". Those coverage symbols were defined as follows:

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" that you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

¶ 5 After the accident, Petrusek settled with Stoute and sought UIM coverage under the Osselaer Policy, which Farmers denied. On September 19, 1996, Petrusek filed her complaint against Farmers seeking a declaratory judgment that she was entitled to UIM coverage under the Osselaer policy. She also sought damages for breach of contract, and for bad faith based on Farmers' failure to timely disclose the policy and its denial of coverage.

¶ 6 The parties filed cross-motions for summary judgment. The trial court granted summary judgment to Farmers, finding that the legislature's amendment to the statute in 1993, adding section 20–259.01(K), changed the law after the Arizona Supreme Court's decisions in *St. Paul Fire and Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977

(1991) and *Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 859 P.2d 732 (1993). The trial court also concluded that the Osselaer policy did not provide primary motor vehicle liability insurance for a specifically insured motor vehicle, that Petrusek was not an insured under the policy, and that UIM coverage was not available to Petrusek under the circumstances of this case.

¶ 7 The parties stipulated to judgment in favor of Farmers on the bad faith claim, but agreed that if the breach of contract and coverage claims are reversed on appeal, the parties may litigate the bad faith claim. The trial court entered final judgment and Petrusek appealed. This court has jurisdiction under A.R.S. section 12–2101(B).

## II.

¶ 8 We view the evidence in the light most favorable to the party against whom summary judgment was granted, and "we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App. 1993). The interpretation of a statute is a question of law that we consider *de novo*. *Barry v. Alberty*, 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App.1992). Interpretation of an insurance contract is also a question of law that we consider *de novo*. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982).

¶ 9 When the Osselaer Policy was issued, A.R.S. section 20–259.01(B) provided that:

Every insurer writing automobile liability ... policies shall also make available to the named insured thereunder and shall by written notice offer the insured ... underinsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

The statute also provided an exception in subsection (K):

An insurer is not required to offer, provide or make available coverage conforming to this section [requiring a written

offer to provide UM and UIM coverage in connection with sale of automobile liability policy] in connection with any general commercial liability policy, excess policy, umbrella policy or other policy that does not provide *primary motor vehicle insurance* for liabilities arising out of the ownership, maintenance, operation or use of a *specifically insured motor vehicle*.

A.R.S. § 20–259.01(K) (emphasis added).[1] Under the statute, if the Osselaer Policy did not provide "primary motor vehicle insurance" for a "specifically insured motor vehicle," then Farmers was not required to offer UIM coverage to Osselaer and it will not be imputed into the policy. The parties dispute whether the Osselaer Policy falls within the terms of A.R.S. section 20–259.01(K).

¶ 10 Farmers asserts that Petrusek's vehicle is not "specifically insured" because it is not listed in the policy. It points out that the policy provides coverage only for generally described classes of "hired" and "non-owned" autos. The policy does not specifically identify these vehicles by listing vehicle identification numbers or vehicle descriptions, or even names of persons who might own the vehicles. Thus, Farmers argues, the covered vehicles are not "specifically insured." We have found no cases, in Arizona or any other jurisdiction, examining this issue. Nevertheless, we think that Petrusek's vehicle qualifies as a "specifically insured motor vehicle" within the meaning of the statute.

¶ 11 The policy does not cover all auto-related liability Osselaer might incur, but provides coverage only for certain classes of vehicles, such as vehicles owned by employees and used in Osselaer's business, or vehicles Osselaer leases or borrows. Thus, the policy describes the insured vehicles specifically enough to distinguish between classes of covered and non-covered vehicles. Because Petrusek's vehicle falls within a class of covered vehicles, it is a "specifically insured motor vehicle."

¶ 12 We next consider Farmers' assertion that the policy does not provide "primary motor vehicle insurance." In section IV(B)(5) the policy provides:

---

1. Formerly A.R.S. § 20–259.01(I) (1993). The section was renumbered in 1996, but was not substantively changed. We will refer to the section by its current designation.

For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

Farmers asserts that, because the policy specifically states that it provides only "excess" coverage for autos not owned by Osselaer, the policy did not provide primary coverage for Petrusek's vehicle.

¶ 13 Petrusek contends that, because her own insurance lapsed, the "excess" coverage under the Osselaer Policy became the primary liability coverage. Therefore the policy does not fall within the exception to the requirement that insurers offer UIM coverage. She cites *St. Paul Fire & Marine Ins. Co. v. Gilmore* for the proposition that where, under the circumstances at the time of the accident, an insurance policy in fact provides the only available liability coverage, it is not a true "excess" policy. 168 Ariz. at 162–63, 812 P.2d at 980–81. In Gilmore, the Arizona Supreme Court noted:

> There are two senses in which insurance may be deemed excess. The first, which is so-called umbrella coverage, applies when the *same insured* has purchased underlying coverage for the *same risk.*
>
> . . .
>
> . . . St. Paul's policy cannot be considered umbrella coverage because AAID neither had nor was required by St. Paul to have an underlying policy covering the same risks.
>
> . . .
>
> The second sense in which insurance may be termed excess applies when *other* insureds have purchased insurance that fortuitously may be applicable to a given loss. But whether AAID's policy with St. Paul is primary or excess in this sense is not dispositive in the present case because the UMA requires us to determine whether *at the time it issued its policy to AAID,* St. Paul was required to offer UIM coverage. . . . [W]hether St. Paul was obligated to offer UIM coverage to AAID when it issued the endorsement cannot hinge on

fortuitous and unforeseen circumstances and events that literally transpire down the road.

. . .

> . . . [I]t is therefore irrelevant that some other insurance might be available or primary in a particular accident. The whole point of UM and UIM coverage *is* that other insurance might *not* be available, or if available, might *not* be adequate to fully compensate for resultant bodily injury.

*Gilmore,* 168 Ariz. at 162–63, 812 P.2d at 980–81 (citations omitted) (emphasis in the original). Although the St. Paul policy at issue was "excess" in the second sense, the court rejected the claim that it was a true "excess" or "umbrella" policy. Notwithstanding its finding that the policy was "excess" in the second sense, the *Gilmore* court required insurers to offer UM and UIM in these circumstances based on the rationale of compensating those injured by uninsured and underinsured motorists.

¶ 14 Like the *Gilmore* court we find ourselves confronted by the situation where the policy is "excess" in the second sense. As in *Gilmore,* the policy in this case plainly states that the policy is intended to provide only excess coverage for autos not owned by Osselaer. Thus, at the time the policy was issued, Osselaer and Farmers contemplated that coverage for vehicles such as Petrusek's would be excess or secondary. Only later fortuitous circumstances have created the possibility that the policy would be Petrusek's primary coverage. But the law changed after *Gilmore* was decided, and that change causes us to resolve the issue differently than *Gilmore* did.

¶ 15 After *Gilmore,* the legislature amended the statute requiring insurers to offer UM and UIM coverage. Contrary to Petrusek's implication, section 20–259.01(K) does not exempt only "true" excess or umbrella policies from the requirement that insurers offer UIM coverage. It exempts insurers from the requirement to offer such coverage "in connection with any general commercial liability policy, excess policy, umbrella policy, or other policy that does not

provide primary motor vehicle insurance...." A.R.S. 20–259.01(K). The plain language of the statute shows an intent to eliminate the requirement that insurers offer UIM coverage when selling automobile liability coverage provided "in connection with" a broad range of "non-primary" type policies, including but not limited to commercial general liability, excess, and umbrella policies. Thus, the exception applies as long as the policy is not intended to be the first or only source of insurance coverage. By its plain language the exception embraces situations where only fortuitous circumstances would convert the policy to primary coverage.

¶ 16   To hold otherwise would ignore the clear language of the policy and nullify the function of section 20–259.01(K). This section's function is to eliminate the requirement that insurers offer UIM coverage in connection with non-primary motor vehicle insurance policies, because it is always possible that a policy which was not initially intended to provide primary motor vehicle insurance will turn out to be the only available insurance. If the determination whether a policy is "primary" were to turn on facts that arise long after the policy is issued, then insurers would effectively be required to offer UIM coverage for all policies. Under such a holding, there could be no "non-primary" policies within the meaning of the statute because it is always possible that the primary policy underlying an excess or umbrella policy will lapse, or its limits be exhausted by other claimants, leaving the excess policy as the only available coverage.

¶ 17   Our reading of the statute is supported by its legislative history. That history indicates that the legislature intended to overrule *Gilmore's* holding that required insurers to offer UIM coverage in connection with general commercial liability policies providing automobile liability insurance. *See Minutes of the Senate Banking and Ins. Comm.*, 41st Legis., 1st Reg. Sess. 4–8 (Ariz. March 31, 1993); *Fact Sheet for H.B. 2145*, 41st Legis., 1st Reg. Sess. (Ariz.1993); *Minutes of the House Banking and Ins. Comm.*, 41st Legis., 1st Reg. Sess. 5–7 (Ariz. February 10, 1993); Minutes of the House Transp.

Comm., 41st Legis., 1st Reg. Sess. 7 (Ariz. February 23, 1993).

¶ 18   Thus, while Petrusek correctly points out that the Osselaer Policy may provide the only available liability coverage in certain situations such as the situation in this case—where Petrusek's own insurance had lapsed at the time of the accident; by its terms the Osselaer Policy does not provide primary insurance for Petrusek's vehicle. Additionally, Petrusek admits that the Osselaer Policy was issued in connection with a "general commercial liability policy." Because the Osselaer policy does not provide "primary motor vehicle insurance" for Petrusek's vehicle, we hold that Farmers was not required to offer UIM coverage in connection with the Osselaer Policy.

### III.

¶ 19   We affirm the trial court's grant of summary judgment to Farmers.

CECIL B. PATTERSON, Jr., Judge, and E.G. NOYES, Jr., Judge, concur.