25 P.3d 13

**Petra CASTILLO, as a Guardian Ad Litem for Rosa Isela De Luna, Plaintiffs–Appellants,**

and

**Juan Francisco De Luna; Ramona De Luna; and Viridiana De Luna, Defendants–Appellants,**

v.

**MILLER'S MUTUAL FIRE INSURANCE COMPANY OF TEXAS, a Texas corporation, Defendant–Appellee.**

No. 1 CA–CV 00–0271.

Court of Appeals of Arizona, Division 1, Department A.

May 22, 2001.

Shultz & Rollins, by James E. Marner, Tucson, Attorneys for Plaintiffs–Appellants.

Mark E. Turley, Glendale, Attorney for Defendant–Appellant Juan Francisco De Luna.

Murphy, Lutey, Schmitt & Beck, by Robert E. Schmitt, Dan A. Wilson, Prescott, Attorneys for Defendants–Appellants, Ramona De Luna and Viridiana De Luna.

Beale & Micheaels, P.C., by K. Thomas Slack, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Ramundo De Luna was killed in a motor vehicle accident. His widow and children ("appellants") filed a declaratory action against defendant, Miller's Mutual Fire Insurance Company of Texas ("Miller's Mutual"), seeking underinsured motorist insurance ("UIM") coverage. The trial court granted summary judgment to Miller's Mutual. For the reasons discussed below, we reverse.

## FACTS AND PROCEDURAL HISTORY

¶ 2 When reviewing motions for summary judgment, we view the facts in the light most favorable to the party opposing the motion. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191, 888 P.2d 1375, 1378 (App. 1994).

¶ 3 On September 20, 1996, in the course of his employment for Agro Phosphate Company, Inc. ("Agro"), De Luna was killed when the truck/fertilizer spreader he was driving was hit by a car that swerved into his lane on a public roadway near Yuma. The car's driver was insured for the statutory minimum, and his insurer tendered the $15,000 limit for distribution among the appellants.

¶ 4 De Luna was driving a self-motorized, four wheel, heavy duty vehicle, known as a "Lor-al," that Agro used to deliver and spread fertilizer and herbicide for its customers. Components of the Lor-al included a 1989 International Harvester truck weighing over 26,000 pounds with a truck's cab, a windshield, side and rear-view mirrors, headlights and brake lights. It was designed to carry a driver and one passenger, with seatbelts for each. On highways, the Lor-al could reach speeds of over 55 miles per hour.

¶ 5 Agro was a Yuma-based business specializing in the sale, delivery and application of agricultural chemicals. Agro used the Lor-al to take fertilizer or herbicide to growers' fields where it was then applied by the Lor-al. Agro had customers as distant as 40 miles from its Yuma headquarters, and Agro employees drove the Lor-al an average of 16,400 miles per year in delivering and applying its products. Agro employees customarily drove the Lor-al on public roads, including Interstate 8.

¶ 6 At the time of the accident, Agro held a Miller's Mutual Agribusiness insurance policy that included, in part, commercial automobile liability ("automobile") coverage, commercial general liability ("general") coverage and inland marine coverage. The automobile coverage provided UIM coverage with a benefit limit of $1,000,000.

¶ 7 The automobile coverage defined an insured as "[a]nyone [ ] using with [Agro's] permission a covered 'auto' " it owned, hired or borrowed. The UIM coverage identified a "covered auto" as any vehicle included on a list of "specifically described 'autos.' " The UIM coverage also provided:

We will not pay for any element of "loss" for which an insured is entitled to receive payment under any workers' compensation, disability benefits or similar law, if an insured is injured while occupying a vehicle which is used as a public or livery conveyance; or which is rented to others;

or is used in a business primarily to transport property or equipment.

¶ 8 In addition to the list of autos, the automobile coverage defined "auto" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads but [not including] 'mobile equipment.'" "Mobile equipment" included "[b]ulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads."

¶ 9 The automobile coverage portion of the policy did not include the Lor-al as one of the "specifically described 'autos.'" Instead, for property damage purposes, the Lor-al was listed as equipment.

¶ 10 Following Miller's Mutual's denial of a claim for UIM coverage benefits, appellants brought a declaratory action asserting that Miller's Mutual's insurance policy affords them UIM benefits. The parties filed cross motions for summary judgment and the trial court granted summary judgment for Miller's Mutual. Appellants timely appealed.

### ISSUES

1. Was the Lor-al insured as an auto under the terms of the policy's automobile coverage?

2. If the Lor-al was not an auto under the policy's automobile coverage, does Arizona law require UIM coverage to be imputed to the policy's general coverage?

3. Do provisions of the insurance policy providing for non-duplication of workers' compensation benefits exclude De Luna from coverage?

### ANALYSIS

■■■ ¶ 11 "In reviewing an order granting summary judgment, we must determine whether there is a genuine issue of disputed material fact, and, if not, whether the trial court correctly applied the substantive law." *Matter of Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). We will affirm summary judgment where the non-moving party has presented so little evidence in support of the claim or defense advanced that reasonable people could not agree with the conclusion advanced by that party. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Also, we review the legal interpretation of an insurance contract *de novo. Tobel v. Travelers Ins. Co.,* 195 Ariz. 363, 366, ¶ 13, 988 P.2d 148, 151 (App.1999).

### I.

■■ ¶ 12 Appellants first argue that the Lor-al was an "auto" under the terms of the policy's automobile coverage and therefore entitled De Luna to UIM coverage because Arizona requires any person who is insured for motor vehicle liability to be insured for UIM liability. *See* Arizona Revised Statutes ("A.R.S.") section 20–259.01(B) (1996). Miller's Mutual counters that the Lor-al was insured as "mobile equipment," not as an "auto."

■■ ¶ 13 In interpreting the terms of an insurance policy, the court must determine and enforce the intent of the parties to the insurance contract at the time it was made. *Darner Motor Sales v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 393, 682 P.2d 388, 398 (1984). . Here, the intent of the parties is illuminated by the structure of the policy. The policy does not include the Lor-al as a scheduled vehicle under automobile coverage but, for purposes of property coverage, lists it as "equipment" under the Inland Marine coverage. "Mobile equipment" is excluded from automobile coverage but is included under general coverage. The labeling of the Lor-al as equipment demonstrates the intent of the parties that the Lor-al be considered "mobile equipment" and not an "auto" for purposes of liability coverage. *See Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993) (stating that the court gives effect to the intent of the parties to an insurance contract).

¶ 14 Clearly, the parties' intent was to insure the operators of the Lor-al and other "mobile equipment" under the policy's general coverage, rather than under the automobile coverage. The Lor-al, therefore, was not an "auto" under the terms of the policy's automobile coverage. Consequently, because the policy included UIM coverage only in connection with its automobile coverage,

UIM coverage was not provided here for De Luna.

## II.

¶ 15 Notwithstanding the parties' intent, appellants argue that, even if De Luna were not covered by the automobile coverage, he still had UIM coverage because Miller's Mutual was required to offer UIM coverage for the Lor-al. Because it was not offered, they reason, UIM coverage must be imputed.

■ ¶ 16 UIM will not be imputed into a policy unless the insurer was required to offer it to the insured. *See Petrusek v. Farmers Ins. Co.*, 193 Ariz. 552, 554, ¶ 9, 975 P.2d 142, 144 (App.1998). At the time the general coverage was issued, A.R.S. section 20–259.01(B) provided in relevant part:

Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

Therefore, in determining whether UIM coverage must be imputed to the general coverage, we must first determine whether the general coverage constituted either a "motor vehicle liability policy" or "automobile liability policy" for which an insurer must make UIM coverage available. *See St. Paul Fire & Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 164–67, 812 P.2d 977, 982–85 (1991).

■ ¶ 17 Under A.R.S. section 20–259.01, "motor vehicle liability policy" and "automobile liability policy" refer, in part, to liability policies mandated by the Arizona transportation statutes. *Id.; see* A.R.S. § 28–1251(A)(1996). Therefore, we must consider whether the Lor-al was a "motor vehicle" for which a motor vehicle liability policy was required.

¶ 18 At the time the policy was issued, A.R.S. section 28–1251(A) required that "[e]very motor vehicle operated on any highway in this state" be covered by a motor vehicle or automobile liability policy. Under this statute, a "motor vehicle" meant "any self-propelled vehicle that is registered or required to be registered under the laws of this state." A.R.S. § 28–1251(G). For the purposes of registration, "motor vehicle" included "any self-propelled vehicle." A.R.S. § 28–101(32)(1996).

¶ 19 However, as Miller's Mutual points out, neither the mandatory insurance requirement nor the registration requirement apply to an "implement of husbandry designed primarily for or used in agricultural operations and only incidentally operated or moved on a highway." A.R.S. § 28–1252 (1996); A.R.S. § 28–302(B)(2) (1996). Miller's Mutual understandably argues that the Lor-al was an implement of husbandry.

¶ 20 At the time of the accident, implements of husbandry were defined as:

vehicles designed primarily for agricultural purposes and used exclusively in the conduct of agricultural operations. Any implement or vehicle, whether self-propelled or otherwise, which is used exclusively for carrying products of farming from one part of a farm to another part of the same farm, or from one farm to another farm, which is used solely for agricultural purposes including the preparation or harvesting of cotton, alfalfa, grains and other farm crops, and which is only incidentally operated or moved on a highway whether as a trailer or self-propelled unit is an implement of husbandry exempt from registration as a motor vehicle.

A.R.S. § 28–101(27) (1996).

¶ 21 But, in *Sullivan v. Green Mfg. Co.*, 118 Ariz. 181, 184–85, 575 P.2d 811, 814–15 (App.1977), this court held that a cotton trailer was not an "implement of husbandry" because it "carr[ied] cotton from a farm over public roads to a cotton gin, a commercial establishment not located on a farm" rather than from farm to farm. Like the trailer in *Sullivan*, the Lor-al did not merely travel from farm to farm. Instead, Agro employees drove it from a commercial enterprise to many different farms. Therefore, according to *Sullivan*, the Lor-al was not an "implement of husbandry."

¶ 22 Miller's Mutual asserts, however, that *Sullivan* was incorrectly decided because only the first sentence of the definition completely defined an "implement of husbandry." It maintains that the second sentence merely defined that subset of implements of husbandry that were exempt from motor vehicle registration. In support of this interpretation, Miller's Mutual points to an amendment that took effect in December 1996, and claims that this amendment effectively overruled the *Sullivan* decision. As amended, an "implement of husbandry" was described as:

a vehicle designed primarily for agricultural purposes and used exclusively in the conduct of agricultural operations, including an implement or vehicle whether self-propelled or otherwise that meets all of the following conditions:

 (a) Is used exclusively for carrying products of farming from one part of a farm to another part of the same farm or from one farm to another farm.

 (b) Is used solely for agricultural purposes including the preparation or harvesting of cotton, alfalfa, grains and other farm crops.

 (c) Is only incidentally operated or moved on a highway whether as a trailer or self-propelled unit.

A.R.S. § 28–101(24) (1998). Miller's Mutual argues that, by the amendment, the legislature was clarifying "circumstances in which a vehicle would fall within the definition contained in the first sentence of 28–101(27)." Miller's Mutual's argument, however, is undercut by the transcript of the House Transportation Committee meeting in which the committee voted to amend A.R.S. section 28–101(24). The transcript clarifies that the amendment merely was a "technical rewrite" with no "hidden" substantive changes. We, therefore, conclude that the *Sullivan* result was not changed by the legislature.

¶ 23 We acknowledge that other states have interpreted "implement of husbandry" differently. *Bingham v. Hollingsworth Mfg. Co., Inc.*, 695 F.2d 445, 453–54 (10th Cir. 1982) (holding fertilizer spreader was an implement of husbandry); *Shoemaker v. Nat'l Ben Franklin of Michigan*, 78 Mich.App. 175, 259 N.W.2d 414, 415 (1977) (holding that a manure spreader pulled by a tractor was an implement of husbandry), *overruled on other grounds by Lee v. Detroit Auto Inter-Ins. Exch.*, 412 Mich. 505, 315 N.W.2d 413, 415 (1982); *Utah Farm Bureau Mut. Ins. Co. v. Orville Andrews & Sons*, 665 P.2d 1308, 1310 (Utah 1983) (holding that a pickup truck with a cattle feeder welded on was an implement of husbandry); *Wisconsin Fertilizer Ass'n v. Karns*, 52 Wis.2d 309, 190 N.W.2d 513, 519 (1971) (holding that fertilizer applicator was an implement of husbandry); *Western Packing Co. v. Visser*, 11 Wash. App. 149, 521 P.2d 939, 943 (1974) (mint distiller pulled on a trailer was an implement of husbandry). But none of these cases involved a statute in which carrying farm products from one farm to another, or from one field to another, was part of the definition. *Id.*

¶ 24 Rather, the statutory definition of "implement of husbandry" manifests our legislature's clear intent that merely being designed for an ultimate agricultural purpose is not conclusive when classifying a vehicle for insurance purposes. In Arizona, it also is necessary to consider the vehicle's use of public roadways. Here, Agro employees regularly drove the Lor-al on public roadways from Agro's commercial site to farms up to 40 miles away. They even drove it on a high-speed interstate. The Lor-al, therefore, was a motor vehicle and not an implement of husbandry. Accordingly, A.R.S. section 28–1251(A)(1) required that it be insured as such.

¶ 25 The policy's general coverage afforded $1,000,000 liability insurance coverage to the Lor-al. But Miller's Mutual never offered AGRO UIM insurance in connection with this coverage as was required by A.R.S. § 20–259.01(B).

¶ 26 When an insurer fails to offer an UIM policy in connection with a motor vehicle liability policy, UIM coverage will be imputed as a matter of law. *Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 113, 859 P.2d 732, 736 (1993); *Gilmore*, 168 Ariz. at 167, 812 P.2d at 985. In *Ormsbee*, our supreme court held that the Underinsured Motorist Act applied to an umbrella policy and imput-

ed UIM coverage to such a policy when the insurer had failed to offer it. 176 Ariz. at 111–13, 859 P.2d at 734–36. In response, the legislature amended the statute to exempt insurers from the requirement of offering UIM coverage "in connection with any general commercial liability policy, excess policy, umbrella policy or other policy that does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle." A.R.S. § 20–259.01(K)(1996); *Petrusek,* 193 Ariz. at 555–56, ¶ 15, 975 P.2d at 145–46. Citing *Petrusek* and A.R.S. section 20–259.01(K), Miller's Mutual now argues that UIM cannot be imputed to the general coverage part of the policy. We disagree.

¶ 27 In *Petrusek,* the court found that the exception of A.R.S. § 20–259.01(k) only "applies as long as the policy is not intended to be the first or only source of insurance coverage." 193 Ariz. at 556, 975 P.2d at 146. But, here, the general coverage was the only source of insurance for the Lor-al. And as the general coverage portion of the policy stated:

> This insurance is primary except when b. below applies.
>
> * * *
>
> b. Excess Insurance
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> * * *
>
> (3) If the loss arises out of the maintenance or use of aircraft, "autos"....

¶ 28 As "mobile equipment" under the policy's terms, the Lor-al was insured exclusively, and therefore primarily, by the general coverage. Therefore, UIM must be imputed to the general coverage.[1]

**Non-duplication of Workers' Compensation Benefits**

¶ 29 Miller's Mutual contends that, even if De Luna was an insured, the policy would not cover the appellants' claims because they duplicate coverage provided by workers' compensation, disability, or similar laws/benefits and the policy excludes duplicate coverage. While the trial court suggested that "an employer providing workmen's compensation may do so in lieu of [uninsured motorist coverage or] UIM without violating public policy," it did not decide this issue. We therefore remand to the trial court to decide whether and to what extent the clause offsets appellants' claims. *See Harbel Oil Co. v. Superior Ct. of Maricopa County,* 86 Ariz. 303, 307–08, 345 P.2d 427, 429–30 (1959) (on remand trial court retains jurisdiction over unconsidered defenses).

**CONCLUSION**

¶ 30 For the foregoing reasons, we reverse the trial court's grant of summary judgment and partially reverse its denial of appellant's motion for summary judgment. We remand to the trial court to decide whether and to what extent the non-duplication of workers' compensation benefits clause offsets benefits.

CONCURRING: RUDOLPH J. GERBER and MICHAEL D. RYAN, Judges.

---

**1.** Appellants also argue that Agro was required to maintain motor vehicle liability insurance on the Lor-al under Arizona's Motor Carrier Financial Responsibility Act, A.R.S. section 28–1233(A). We do not decide that issue because motor vehicle liability insurance was required under A.R.S. section 28–1251(A)(1).