Jason W. BILLS, Plaintiff–Appellant,

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY,** Defendants–Appellees.

No. 00–16369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Filed Feb. 11, 2002.

Mack T. Jones and Robert Bohm, Hagen, Bohm, Boyle & Jones, Phoenix, AZ, for the plaintiff-appellant.

Steven Plitt, Goodwin Raup PC, Phoenix, AZ, for the defendants-appellees.

---

Before: BRIGHT,* B. FLETCHER, and FISHER, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Jason Bills brings this diversity action against United States Fidelity and Guaranty Company and Fidelity and Guaranty Insurance Company (collectively "USF & G") to recover under an insurance policy issued by USF & G to Bills' employer, Archon, Inc. ("Archon"). Bills was injured by an uninsured motorist while flagging traffic to protect other Archon employees who were repairing a water main in the roadway. A front loader was positioned to give added protection. Bills claims that, under Arizona law, uninsured motorist ("UM") coverage for the front loader under these circumstances is required as a part of the commercial general liability ("CGL") portion of Archon's Business Insurance Policy even though it was not expressly stated as a part of the coverage. If UM coverage is imputed, he claims that he is entitled to insurance payments based on his use of the front loader at the time of the accident.

The district court granted summary judgment in favor of USF & G. We have jurisdiction over the appeal from the summary judgment pursuant to 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo*. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001). We reverse and remand.

## I.

**Imputing UM Coverage Into the CGL policy**

The parties agree that the front loader in question was mobile equipment not covered under Archon's business auto policy.

---

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Bills also concedes that, by the terms of the insurance contract, there is no UM coverage available to Bills based on the use of the front loader. However, the CGL policy provided liability coverage for "bodily injury" arising out of the use of mobile equipment, with two exceptions not applicable here. The initial question presented on this appeal is whether Arizona law requires UM coverage for the front loader as part of the CGL policy. We conclude that UM coverage for the front loader is imputed as a matter of Arizona law.

[1] A recent decision of the Arizona Court of Appeals provides guidance on this issue.[1] *Castillo v. Miller's Mut. Fire Ins. Co.*, 200 Ariz. 211, 25 P.3d 13 (Ct.App. 2001). In *Castillo*, the court found that the vehicle in question, a Loral, was mobile equipment excluded from the employer's automobile coverage but included under the CGL coverage. *Id.* at 16. The court imputed underinsured motorist coverage for the Loral into the CGL policy. *Id.* at 17.

■ UM coverage "will not be imputed into a policy unless the insurer was required to offer it to the insured" under the Uninsured Motorist Act ("UMA"). *Id.* The UMA requires "[e]very insurer writing automobile liability or motor vehicle liability policies" to offer UM coverage. Ariz.Rev.Stat. § 20–259.01(A) (2001). Accordingly, we must determine whether the CGL coverage of the front loader constituted either a "motor vehicle liability policy" or "automobile liability policy" for

which an insurer must make UM coverage available. *Castillo*, 25 P.3d at 17.

According to *Castillo*, "motor vehicle liability policy" refers, in part, to liability policies mandated by the Motor Vehicle Safety Responsibility Act ("SRA"), Ariz. Rev.Stat. § 28–4001 *et seq.* (2001). The SRA mandates liability policies for "every motor vehicle operated on the highway in this state" and defines "motor vehicle," for purposes of the SRA, to mean "any self-propelled vehicle that is registered or required to be registered under the laws of this state." Ariz.Rev.Stat. §§ 28–4135(A) & 28–4001(3). Bills concedes that the front loader was not registered or required to be registered. In contrast, the liability policy at issue in *Castillo* covered a vehicle that the court determined was required to be registered, meeting the SRA definition of a "motor vehicle liability policy." *Castillo*, 25 P.3d at 17–18. Thus, the court of appeals was not forced to decide whether a policy that did not meet the SRA definition would meet the UMA definition, and it did not express an opinion on this issue.

■ However, the Arizona Supreme Court has indicated that liability policies mandated by the SRA are not the only policies encompassed by the term "motor vehicle liability policies" as that term is used in the UMA. *St. Paul Fire & Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977, 982 (1991) (in banc) ("We have ... an instruction from the legislature that counsels against using the SRA's definition of motor vehicle liability policy for the purposes of other acts such as the UMA.").[2]

1. In the absence of a decision by the Arizona Supreme Court, a federal court is obligated to follow the decisions of the state's intermediate appellate courts where there is no convincing evidence that the state supreme court would decide differently. *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996). Notably, the district court did not

have the benefit of the Arizona Court of Appeals decision in *Castillo* at the time it rendered its judgment.

2. The district court ignored this language in *Gilmore*, apparently deciding that it was dicta because the supreme court provided an alternative reason for imputing UM coverage into the CGL policy in that case. Even if the

Rather, a liability policy that covers a "motor vehicle" constitutes a "motor vehicle liability policy" under the UMA even if it would not be a "motor vehicle liability policy" under the SRA. *Id.* at 983. While the term "motor vehicle" is not defined in the UMA, it is defined in the Arizona transportation statute, consistently with its ordinary meaning, as "a self-propelled vehicle." Ariz.Rev.Stat. § 28–101(29) (2001). Given the Arizona Supreme Court's resistance to applying the narrow definitions found in the SRA for purposes of the UMA, *see Gilmore* 812 P.2d at 982, we find it appropriate to apply the broader definition of "motor vehicle" found in Ariz.Rev. Stat. § 28–101(29) rather than the narrower definition found in the SRA, Ariz.Rev. Stat. § 28–4001(3).

In *Gilmore*, the supreme court stated that the UMA is remedial and should be liberally construed. *Gilmore*, 812 P.2d at 983. The opinion goes on to explain that the purpose of the UMA is to provide full coverage, including UM coverage, to those with the foresight to protect themselves against the public. *Id.* at 985. It would be contrary to the purposes of the UMA, as explained by the Arizona Supreme Court, to bar those who insure a motor vehicle from having the opportunity to fully insure by obtaining UM coverage. *Id.* Thus, if an insurance policy covers a motor vehicle, as defined in Ariz.Rev.Stat. § 28–101(29), UM coverage must be offered, regardless of whether the motor vehicle falls within the limited scope of the SRA or whether the coverage is provided in a traditional auto liability policy. *See id.* at 983("[T]he fact that [the employer's] policy with [the insurer] is labeled as a

comprehensive general liability policy does not mean it is not also an automobile liability policy under the UMA.").

Since a front loader is a self-propelled vehicle, it fits the definition of "motor vehicle." The CGL policy issued to Archon by USF & G provided liability insurance for this motor vehicle, thus making it a "motor vehicle liability policy" for which an offer of UM coverage generally is required under the UMA.

Nonetheless, USF & G argues that the CGL's coverage of the front loader falls within an exception to the UMA. The UMA provides:

> An insurer is not required to offer, provide or make available coverage conforming to this section in connection with any general commercial liability policy, excess policy, umbrella policy or other policy that does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle.

Ariz.Rev.Stat. § 20–259.01(L). However, this provision does not apply if the policy is intended to be the primary insurance for the motor vehicle. *See Castillo*, 25 P.3d at 19(noting that this provision "applies as long as the policy is not intended to be the first or only source of insurance coverage") (quoting *Petrusek v. Farmers Ins. Co.*, 193 Ariz. 552, 975 P.2d 142, 146(Ct.App.1998)). Here the front loader was not covered by any other insurance policy. Therefore, the primary insurance for liabilities arising out of its use was Archon's CGL policy. Con-

---

language is dicta, it is the best indication available from the Arizona Supreme Court as to how the UMA and SRA interact, and our objective in this diversity case is to predict how the state supreme court would decide these issues. *Lewis,* 87 F.3d at 1545. Al-

though *Gilmore* has been limited by a statutory amendment to the UMA discussed below, that amendment did not undermine the supreme court's analysis of the interaction between the SRA and the UMA.

sequently, the CGL policy does not fall within the exception to the UMA.

When an insurer fails to offer a UM policy in connection with a motor vehicle liability policy, UM coverage is imputed as a matter of law. *Castillo*, 25 P.3d at 18. As a result, we impute UM coverage for the front loader, which would provide coverage to Bills if he can establish that he was using the front loader when the uninsured motorist hit him.

## II.

### Use

 Bills was an insured under the CGL policy because he was an Archon employee acting in the scope of his employment at the time of the accident.[3] As discussed above, the CGL policy was the primary motor vehicle insurance for the front loader, covering liabilities arising out of the "ownership, maintenance, operation or use" of the front loader. Ariz.Rev.Stat. § 20–259.01(L). The imputed UM coverage, upon which Bills bases his claim, is only as extensive as the liability coverage. Ariz.Rev.Stat. § 20–259.01(A). Therefore, to trigger the UM coverage of the front loader, Bills is required to have been maintaining, operating, or using the front loader.

It is clear from the undisputed facts that Bills was neither maintaining nor operating the front loader when the accident occurred; he was flagging traffic several feet in front of the front loader. The question before us is whether Bills has raised a triable issue of fact as to whether he was "using" the front loader at the time of the accident. The Arizona Court of Appeals has defined "use" broadly to include the employment of a specialized vehicle "for functions that are reasonably dictated by the nature of the work in which the business is engaged and for which the vehicle in question has been equipped and may be reasonably expected to be used." *Tobel v. Travelers Ins. Co.*, 195 Ariz. 363, 988 P.2d 148, 152 (Ct.App. 1999).

 We conclude, viewing the evidence in the light most favorable to Bills, that a reasonable juror could find that Bills was using the front loader as a warning device to protect himself and the other workers from traffic while they worked nearby. According to Bills' evidence, the front loader had been placed in the westbound left turn lane on Baseline Road, in part, to alert westbound Baseline traffic to the construction activity. The front loader was equipped with four-way flashers that Bills testified were flashing. Bills also testified that another piece of equipment, a front-end loader, had been positioned at the southeast corner of Higley and Baseline with its flashers on to alert eastbound traffic of the construction activity and protect the workers. Although an Archon supervisor states in an affidavit that Ar-

---

**3.** Archon's CGL policy provides:

Each of the following is also an insured:

a. Your "employees" ... but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

Archon CGL Policy at 6–7. USF & G argues that Bills can only be an insured if he was driving the front loader because the policy provides:

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission....

Archon's CGL Policy at 7. However, this clause merely provides for additional insureds who are permissive users of the mobile equipment. The policy provides that, as long as the employee is acting within the scope of his employment, he is an insured under the CGL policy and does not need the benefit of the permissive user clause.

chon employees were instructed to never use construction equipment as a road barrier, Bills' testimony that, in fact, two pieces of construction equipment were used as barriers or warning devices places USF & G's evidence in dispute.

One could reasonably expect the front loader, a specialized piece of roadway construction equipment, to be used by road-working crews as a warning device and protective barrier while they performed their work around it. *See id.* ("Given the nature of Barricade's business, 'use' of the flat-bed truck envisions its employment in providing a source of protection for the driver while he is outside the truck at a work site."). Given the hazardous nature of Archon's business, a jury could reasonably conclude that Bills and the other workers were using the front loader "in a manner consistent with its purpose" and covered by the CGL policy under these circumstances. *Id.* at 154.

USF & G argues that, even if Bills was using the front loader at the time of the accident, the accident did not arise out of that use. We disagree. In *Tobel,* the Arizona Court of Appeals took an expansive approach to the scope of the "arising out of" language. They wrote that a causal nexus can and does exist when an injury may be said to arise out of the inherent use of a vehicle. *Id.* at 155. The court followed the approach taken in *Aetna Cas. & Sur. Co. v. McMichael,* 906 P.2d 92 (Colo.1995) (en banc), to hold that Tobel's injuries arose out of the use of his specialized flat-bed truck:

> [T]he causation test did not require that the insured vehicle itself be the source of the injury, but "only that the use be integrally related to the claimant's activities and the injury at the time of the accident." The court noted that McMichael was aware of the dangers posed to roadway workers by passing cars, that

he had not entered the roadway until he had positioned his truck to serve as a notice of his presence, and that he had thus relied on its safety features to protect him from oncoming traffic. The court therefore found that the injuries arose from the use of the truck because the "use of the truck, and particularly its specifically designed safety features, was an integral part of [McMichael's] work on the roadway."

*Tobel,* 988 P.2d at 155.

In this case, viewing the evidence in the light most favorable to Bills, Bills and the other roadway workers relied upon the front loader's safety equipment to protect them from the dangers posed by passing cars. Thus, like the trucks in *Tobel* and *McMichael,* the front loader was an integral part of Bills' work on the roadway. Under Arizona law, Bills has raised a genuine issue of material fact as to whether his injuries arose out of the use of the front loader, triggering the imputed UM coverage. Under these circumstances, summary judgment is inappropriate. *See Meade v. Cedarapids, Inc.,* 164 F.3d 1218, 1221 (9th Cir.1999) ("Summary judgment is not proper if material factual issues exist for trial."). We reverse and remand for trial on the question of use.

REVERSED AND REMANDED.