IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ANTHONY JACKSON and LETICIA JACKSON, a married couple, | ) ) ) | 2 CA-CV 2011-0001 DEPARTMENT B |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, a foreign insurance company; AMCO INSURANCE COMPANY, a foreign insurance company, | ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20086091

Honorable Paul E. Tang, Judge

AFFIRMED

Goldberg & Osborne
  By David J. Diamond and D. Greg Sakall                                                Tucson
                                        Attorneys for Plaintiffs/Appellants

Goering, Roberts, Rubin, Brogna, Enos
& Treadwell-Rubin, P.C.
  By William L. Rubin and Elizabeth L. Warner                                           Tucson
                                        Attorneys for Defendant/Appellee
                                        Nationwide Mutual Insurance Company

K E L L Y, Judge.

¶1 Anthony and Leticia Jackson appeal from the trial court's grant of Appellee Nationwide Mutual Insurance Company's motion for summary judgment and the denial of the Jacksons' motion for new trial in this declaratory action against Nationwide and its subsidiary AMCO Insurance Company (collectively "Nationwide").[1] The Jacksons argue the court erred in concluding that A.R.S. § 20-259.01, Arizona's Uninsured Motorist Act (UMA), did not require Nationwide to offer uninsured motorist coverage under the Businessowner's Policy it had provided to an automobile service and repair station. They contend that because Nationwide failed to offer such coverage, it must be imputed to the policy, providing uninsured motorist coverage for injuries Anthony Jackson sustained while riding as a passenger in his own vehicle, when it was being driven by a service station employee and was struck by another vehicle. For the following reasons, we affirm.

**Background**

¶2 Although we view the facts in the light most favorable to the party against whom summary judgment was granted, *Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003), here the parties filed a joint stipulated statement of facts in connection with their separate motions for summary judgment. The facts set forth below are taken from that stipulation. In January 2005, Anthony Jackson had mechanical problems with his automobile and stopped at a Chevron repair station. Jackson had planned to leave his

---

[1]Consistent with the parties' arguments, we treat the two policies at issue in this case as having been issued by Nationwide.

vehicle at the station, but, as the parties stipulated, a Chevron employee "offered to show Jackson how to drive the [vehicle] with its mechanical problems." Jackson accepted, and the employee drove Jackson's vehicle with Jackson in the passenger seat. After Jackson's vehicle entered a roadway adjacent to the Chevron station, it was struck by another vehicle driven by Eduardo Martinez and Jackson was injured. Neither Martinez, who was at fault, nor his vehicle was insured.

¶3 Chevron carried two insurance policies, a Business Auto Policy (BAP) issued by Nationwide and a Businessowner's Policy (BOP) issued by AMCO. The policies were issued by the same agent at the same time as part of the same transaction, and were effective for the same time period.

¶4 The BAP provided coverage for a wide range of risks for motor vehicles used in Chevron's business. Under the policy, Nationwide provided liability coverage for bodily injury or property damage caused by an accident involving a "covered 'auto.'"[2] The policy also contained an uninsured motorist (UM) endorsement under which Nationwide agreed to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'"

¶5 The BOP is a commercial general liability (CGL) policy. It provides coverage for losses such as damage to Chevron's building and premises, loss of property, and equipment breakdown. It also provides liability and medical payment coverage,

---

[2]Chevron was a named insured "for any covered 'auto.'" "Covered auto" includes automobiles Chevron did not "own, lease, hire, rent or borrow that are used in connection with [the] business."

3

subject to a general exclusion for losses arising out of the use of automobiles. Section 2(g) of the BOP specifies that the policy does not apply to "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." But, this exclusion is replaced by a garage liability endorsement that extends limited automobile coverage for Chevron's garage operations.[3] Specifically, it provides that the bodily injury and property damage liability coverages in the BOP would apply to "[t]he operation by an insured of your 'customer's auto' in the course of your 'garage operations.'" The BOP did not contain a UM endorsement, and Nationwide did not offer UM coverage to Chevron for the BOP.

¶6 After the Jacksons recovered damages under the UM endorsement to Chevron's BAP,[4] they filed a complaint for declaratory judgment seeking a judicial determination that UM coverage should be imputed to the BOP. As previously noted, the Jacksons and Nationwide filed motions for summary judgment and stipulated that the only issue to be decided was "whether [Nationwide] was required to offer UM coverage to [Chevron] on the BOP." After a hearing, the trial court granted Nationwide's motion for summary judgment and denied the Jacksons' motion. The Jacksons filed a motion for

---

[3] "'Garage operations' means the ownership, maintenance or use of premises for the purpose of a business of servicing, repairing, parking or storing 'customer's autos.'" "Customer's auto" means a customer's motor vehicle left with the garage business for "service, repair, storage or safekeeping." "'Garage operations' also includes all operations necessary or incidental to the performance of garage operations."

[4] Nationwide concedes that Jackson's vehicle was covered under the BAP as a non-owned auto. Uninsured motorist benefits were paid in accordance with the policy.

4

new trial, in which they argued the court erred in finding Nationwide was not required to offer UM coverage on the BOP and essentially reurged the arguments they had made on summary judgment. The court denied the motion and this appeal followed.

**Discussion**

**¶7** In its lengthy minute entry granting Nationwide's motion for summary judgment, the trial court concluded Nationwide was not required to offer Chevron UM coverage when it issued the BOP, relying, in part, on § 20-259.01(L) and case law interpreting that provision. *See, e.g.*, *Petrusek v. Farmers Ins. Co. of Ariz.*, 193 Ariz. 552, 975 P.2d 142 (App. 1998) (interpreting former § 20-259.01(K), now renumbered as subsection (L)). The court concluded the BOP was a general commercial liability policy that provided excess[5] liability coverage and was not a primary automobile liability insurance policy. On appeal, the Jacksons contend the court erred, arguing the BOP was a primary motor vehicle insurance policy subject to the requirements of § 20-259.01(A).

**¶8** "We review the denial of a motion for new trial . . . for an abuse of discretion." *Mullin v. Brown*, 210 Ariz. 545, ¶ 2, 115 P.3d 139, 141 (App. 2005). We review de novo a grant of summary judgment and must decide whether the trial court correctly applied the law. *See Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, ¶ 14, 129 P.3d 966, 971 (App. 2006). We likewise review the interpretation of a statute de novo. *State v. Wilson*, 200 Ariz. 390, ¶ 4, 26 P.3d 1161, 1164 (App. 2001). Similarly,

---

[5]Although the BOP had a clause indicating its coverage was excess, the parties agreed at oral argument that because the BAP had a similar clause, the two clauses invalidated each other and should not be considered.

interpretation of an insurance contract is a question of law we review de novo. *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, ¶ 8, 187 P.3d 1107, 1110 (2008).

¶9        We begin with the UMA. Section 20-259.01(A) provides, in relevant part, as follows:

> Every insurer writing automobile liability or motor vehicle liability policies shall make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. The selection of limits or rejection of coverage by a named insured or applicant on a form approved by the director is valid for all insureds under the policy. . . .

"[T]he purpose of the [UMA] is 'to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others.'" *Estate of Ball v. Am. Motorists Ins. Co.*, 181 Ariz. 124, 127, 888 P.2d 1311, 1314 (1995), *quoting Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 112, 859 P.2d 732, 735 (1993). To carry out this purpose, § 20-259.01(A) mandates that insurers offer UM coverage to their insureds in the form of "written notice."

¶10        Because the UMA mandates that an insurer offer UM coverage for every automobile liability policy issued to an Arizona insured, the proper remedy for failing to do so is "to include the coverage in the policy by operation of law." *Ins. Co. of N. Am. v. Superior Court*, 166 Ariz. 82, 85-86, 800 P.2d 585, 588-89 (1990). However, the legislature has excepted from this provision "any general commercial liability policy,

6

excess policy, umbrella policy or other policy that does not provide primary motor vehicle insurance." § 20-259.01(L).

¶11     "When interpreting statutes, our primary goal is to give effect to" the legislature's intent in enacting the provisions. *Bither v. Country Mut. Ins. Co.*, 226 Ariz. 198, ¶ 8, 245 P.3d 883, 885 (App. 2010). And, "[t]he best indication of legislative intent is the plain language of the statute." *Id.* Here the language of § 20-259.01 is clear; it requires the insurer issuing automobile or motor vehicle liability policies to offer UM coverage unless certain exceptions apply.

¶12     Nationwide contends the BOP policy falls within the exception set forth in § 20-259.01(L), and it was not, therefore, required to offer UM coverage to Chevron when it issued that policy. The Jacksons concede the BAP provided primary auto insurance for Chevron and they agree the BOP is a general commercial policy, or CGL policy. But, they argue, "by virtue of the [garage liability] endorsement, the BOP is not a standard CGL policy" as contemplated by § 20-259.01(L). Rather, they contend the endorsement converted the BOP to a second policy providing "primary automobile liability coverage for [Chevron]'s garage operations." They insist the BOP "was written and intended . . . as a primary automobile liability policy when an employee is driving a customer's automobile." Thus, the Jacksons maintain, "under A.R.S. § 20-259.01(A) and (L), Nationwide was obligated to offer UM coverage under both primary policies," and, because no such offer was made under the BOP, coverage should be imputed by law. *See id.*

7

¶13      The Jacksons rely on *St. Paul Fire and Marine Insurance Co. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977 (1991), in support of their argument that the BOP provided primary automobile insurance. In *Gilmore*, an employee driving in the course of her employment was injured by a negligent motorist. *Id.* at 161, 812 P.2d at 979. After she exhausted her own insurance, she sought to recover from her employer's CGL policy. *Id.* The CGL policy contained automobile insurance but uninsured motorists coverage had not been offered on the policy. *Id.* Our supreme court held that because the policy provided automobile liability insurance, § 20-259.01(A) required the insurer to offer UM coverage. *Id.* at 167, 812 P.2d at 985.

¶14      Following *Gilmore*, the legislature amended § 20-259.01 to include the exception now contained in § 20-259.01(L).[6] *See* 1993 Ariz. Sess. Laws, ch. 207, § 1. Division One of our court concluded in *Petrusek*, 193 Ariz. 552, ¶ 17, 975 P.2d at 146, that the legislature intended the exception to overrule *Gilmore*'s requirement that insurers offer UM coverage when general commercial liability policies include automobile liability coverage. In *Petrusek*, an employee was injured while driving during the course of business. *Id.* ¶ 2. Her employer carried a BAP as well as a CGL policy. *Id.* ¶ 3. The employee sought to recover from the CGL policy, which provided auto coverage only as excess insurance. *Id.* ¶¶ 3-5, 12. She argued that because her personal insurance

_____

[6]At the time it was enacted the exception was contained in § 20-259.01(I). *See* 1993 Ariz. Sess. Laws, ch. 207, § 1. We refer to the exception by its current designation as § 20-259.01(L).

coverage had lapsed,[7] her employer's CGL policy became primary insurance. *Id.* ¶ 13. We rejected this argument, noting that the legislative history of § 20-259.01(L) "indicates that the legislature intended to overrule *Gilmore*'s holding that required insurers to offer UIM coverage in connection with general commercial liability policies providing automobile liability insurance."[8] *Id.* ¶ 17. We reasoned that

> [t]he plain language of the statute shows an intent to eliminate the requirement that insurers offer [underinsured motorist] coverage when selling automobile liability coverage provided 'in connection with' a broad range of 'non-primary' type policies, including but not limited to commercial general liability, excess, and umbrella policies. Thus, the exception applies as long as the policy is not intended to be the first or only source of insurance coverage.

*Id.* ¶ 15.

¶15 Here the BOP issued to Chevron provides typical commercial general liability coverage. The BAP, issued at the same time, provides the type of coverage typically found in a motor vehicle liability policy, including UM coverage. The BAP was issued to Chevron at the same time as the BOP, it covered the same policy period and the insured was offered UM coverage in connection with the transaction. Under these circumstances, we conclude the BOP was not "intended to be the first or only source of [automobile liability] insurance coverage" and the UMA does not apply to it.[9] *Id.*

---

[7]We agree with the Jacksons that Petrusek's argument differs from their own. But, as discussed below, we find the reasoning of *Petrusek* equally applicable here.

[8]The Jacksons agree the legislature intended to overrule *Gilmore* by enacting the language contained in § 20-259.01(L).

[9]Although *Petrusek* addressed underinsured motorist ("UIM") coverage, its reasoning is equally applicable to UM coverage. *See* § 20-259.01 (exception contained in

9

¶16 The Jacksons also argue that, "consistent with . . . [A.R.S.] § 28-4010, the [garage liability] endorsement set forth that the [BOP] provides primary automobile liability coverage in situations such as when an employee is driving a customer's vehicle." Section 28-4010(A) sets forth the following presumption:

> If two or more policies affording valid and collectible motor vehicle liability insurance apply to the same motor vehicle that is involved in an occurrence out of which a liability loss arises and one of the policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles, both of the following are conclusively presumed:
>
> 1. If at the time of loss the motor vehicle is being operated by a person engaged in one of the businesses or by the person's employee or agent, the insurance afforded by the policy issued to the person engaged in the business is primary and the insurance afforded by any other policy is excess.

¶17 In support of their argument that § 28-4010 establishes the BOP provided primary automobile insurance in this situation, the Jacksons rely on *Nationwide Mutual Insurance v. CNA Insurance Co.*, 159 Ariz. 368, 767 P.2d 716 (App. 1988), and *State Farm Mutual Automobile Insurance Co. v. Fireman's Fund Insurance Co.*, 149 Ariz. 179, 717 P.2d 858 (1986).[10] But neither case addresses a situation involving a determination of priority between two policies held by the same garage owner. To the

---

subsection L applies to both UM and UIM coverage). And, although the Jacksons are correct that *Petrusek* did not involve a garage liability endorsement, its statement of what the statute requires is equally applicable in this context.

[10]These decisions refer to A.R.S. § 28-1170.01, the predecessor to § 28-4010. *See* 1997 Ariz. Sess. Laws, ch. 87 § 12 (renumbering as § 28-4010); 1995 Ariz. Sess. Laws, ch. 132, § 3; 1978 Ariz. Sess. Laws, ch. 183, § 2.

contrary, in *Nationwide*, we held that § 28-4010 is intended to apply "where there are multiple carriers" to "requir[e] that the insurer for the negligent driver will usually be the primary carrier." 159 Ariz. at 370, 767 P.2d at 718.

¶18 The trial court concluded, and we agree, that "the statutory dictates of [§ 28-4010] are inapposite" here. We find nothing in the plain language of § 28-4010 that suggests the legislature intended the provision to apply to determine priority between two policies issued to the same garage owner. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 71, 105 P.3d 1163, 1178 (2005) (in interpreting statutes, we look first to language of statute and give words used their plain meaning). Rather, the conclusive presumptions of § 28-4010 were intended to "plac[e] primary liability on the party who is most responsible for the loss and thus encourag[e] the negligent party to use due care." *John Deere Ins. Co. v. W. Am. Ins. Group*, 175 Ariz. 215, 218, 854 P.2d 1201, 1204 (App. 1993). These considerations would not be served where both policies are issued to the same party "engaged in the business of . . . repairing . . . motor vehicles." § 28-4010. And, as Nationwide pointed out at oral argument, because § 28-4010 addresses only priority of payment for a motor vehicle accident when an insured is involved in certain automobile businesses, it is not relevant to our determination of whether the BOP offered primary automobile insurance.

¶19 In sum, because the BOP is a CGL policy "not intended to be the first or only source of insurance coverage," *Petrusek*, 193 Ariz. 552, ¶ 15, 975 P.2d at 146, it "does not provide primary motor vehicle insurance," and falls within the exception created by § 20-259.01(L). Accordingly, the policy is not subject to the written notice

11

requirement of § 20-259.01(A), and UM coverage is not imputed based on Nationwide's not having offered it. As previously noted, the Jacksons' motion for new trial essentially repeated the arguments that had been made on summary judgment. For the reasons stated above, the court did not abuse its discretion in denying either that motion or the Jacksons' motion for summary judgment.

## Disposition

¶20 We affirm the trial court's grant of Nationwide's motion for summary judgment and its denial of the Jacksons' motions for summary judgment and new trial.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge