SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, | ) ) ) | Arizona Supreme Court No. CV-11-0324-CQ |
| Plaintiff/Counterdefendant, | ) ) ) | United States District Court No. 09-1961 PHX-DAE |
| v. | ) | |
| SABINE SHARP, a married woman, | ) ) | |
| Defendant/Counterclaimant. | ) ) | **O P I N I O N** |
| _____ | ) ) | |

Certified Questions from the United States District Court
for the District of Arizona

The Honorable David Alan Ezra, Judge

**QUESTIONS ANSWERED**

_____

ALLEN LAW GROUP, PLC                                        Phoenix
     By   Lynn M. Allen
Attorneys for American Family Mutual Insurance Company

BEALE, MICHEAELS & SLACK, P.C.                             Phoenix
     By   K. Thomas Slack
          Tracy A. Gromer
Attorneys for Sabine Sharp

HARALSON, MILLER, PITT, FELDMAN & MCANALLY, P.L.C.        Tucson
     By   Stanley G. Feldman

And

KNAPP & ROBERTS, P.C.                                      Scottsdale
     By   David L. Abney
Attorneys for Amicus Curiae Arizona Association for
Justice/Arizona Trial Lawyers Association

_____

**P E L A N D E R**, Justice

¶1 Arizona's Uninsured/Underinsured Motorist Act (UMA), A.R.S. § 20-259.01 (2002 & Supp. 2011), requires all insurers writing motor vehicle liability policies to also offer underinsured motorist (UIM) coverage that "extends to and covers all persons insured under the policy." § 20-259.01(B). UIM coverage applies when an insured's total damages exceed all applicable liability limits, subject to any valid limitations the insurer imposes. *See* § 20-259.01(G)-(H). But any "exceptions to [UIM] coverage not permitted by the [UMA] are void." *Taylor v. Travelers Indem. Co.*, 198 Ariz. 310, 315 ¶ 13, 9 P.3d 1049, 1054 (2000); *see also Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 360 ¶ 9, 174 P.3d 270, 272 (2008).

¶2 In the underlying federal court action, the insurer, American Family Mutual Insurance Company, sought a declaratory judgment that it had validly denied an insured's UIM claim. The insured, Sabine Sharp, counterclaimed for breach of contract and bad faith. The United States District Court for the District of Arizona certified three questions to this Court:

 1. Does A.R.S. § 20-259.01(G) [("Subsection (G)")] require an auto insurer to provide [UIM] coverage for the named insured under the auto policy, who was injured while a passenger on a motorcycle driven by her husband (the named insured on a separate motorcycle policy issued by the same insurer), where the injured insured's total damages exceed the amount of her tort recovery

2

from her husband under the husband's motorcycle policy?

2. Or, does A.R.S. § 20-259.01(H) [("Subsection (H)")] permit American Family to refuse to provide its named insured with [UIM] coverage under her auto policy, because she was partially indemnified as a claimant under the liability coverage of the separate motorcycle policy issued [by American Family] to her husband . . ., whose negligence contributed to her injuries?

3. If [Subsection (H)] allows American Family to exclude [UIM] coverage, does American Family's "other insurance" exclusion do so in compliance with Subsection (H)?

¶3 We accepted jurisdiction pursuant to Article 6, Section 5(6) of the Arizona Constitution, A.R.S. §§ 12-1861 to -1867 (2003), and Arizona Supreme Court Rule 27. We answer the first question in the affirmative and the second in the negative, and therefore find it unnecessary to answer the third.

**I.**

¶4 The District Court's certification order stated the relevant facts as follows:

> On September 18, 2005, Defendant [Sabine Sharp] was injured in a single vehicle accident while riding as a passenger on a motorcycle operated by [her husband] James Sharp. Defendant claims the accident was caused by sudden tire failure.

> At the time of the accident, James Sharp had an individual insurance policy issued by American Family covering his 2003 Indian motorcycle, policy number 0478-4056-04 (the "Motorcycle Policy"). James Sharp was the only individual named on the Motorcycle Policy, which had a liability limit of $100,000.

> Defendant was the policyholder and named insured

3

on another insurance policy, number 0478-4056-05, which was also issued by American Family at the time of the accident. This policy covered Defendant's 2002 Ford Escape (the "Escape Policy"). Defendant was the only named insured on the Escape Policy; she purchased the Escape Policy separately from her husband's Motorcycle Policy and paid a separate premium per the Escape Policy.

On May 17, 2007, Defendant notified American Family of both a claim for negligence against James Sharp and a first-party underinsured motorist ("UIM") claim under the Escape Policy. American Family failed to respond to Defendant's request that it assign a claim adjuster for her UIM claim. Defendant also claims that American Family "did not suggest" that Defendant had to "select" only one policy that would apply to her liability and UIM claims arising from the accident.

To recover for her injuries, Defendant filed a personal injury action in June 2007 against the tire inner tube manufacturer, the motorcycle dealership, as well as her husband for negligence in Maricopa County Superior Court. On May 1, 2009, Defendant settled the lawsuit against her husband in exchange for the $100,000 liability limit of the Motorcycle Policy. In the Settlement Agreement reached between Defendant and her husband, the parties agreed that Defendant did not release the [UIM] claim she intended to file on the Escape Policy.

On May 7, 2009, Defendant served written demand on American Family for the $100,000 UIM limit established by the Escape Policy. On July 15, 2009 and July 22, 2009, American Family denied coverage for Defendant's UIM claim, asserting that she could not receive coverage under the Escape Policy because she had already recovered on the Motorcycle Policy. Specifically, American Family claimed that Defendant could not recover both liability and UIM coverage under the same policy. On August 3, 2009, American Family sent Defendant another letter explaining that UIM coverage was not available under the Escape Policy because the policy prohibited "stacking," and at least one court in the district of Arizona had agreed with American Family in an earlier [unpublished] case.

4

(record citations and footnote omitted); *see* A.R.S. § 12-1863(2) (requiring order to state facts relevant to certified questions); Ariz. R. Sup. Ct. 27(a)(3)(B) (same).

¶5        The Escape Policy's UIM endorsement has an "Other Insurance" clause that states:  "If two or more policies are issued to you by us or any other member company of the American Family Insurance Group of companies, apply [sic] to the same accident, only one of the policies will apply.  You will select the one policy that will apply."  The Motorcycle and Escape Policies both define "you" as "the policyholder shown in the Declarations and spouse, if living in the same household."

**II.**

¶6        The first two certified questions turn on the interplay between Subsections (G) and (H) of § 20-259.01. Subsection (G) states:

> "Underinsured motorist coverage" includes coverage for a person if the sum of the limits of liability under all . . . liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury . . . resulting from the accident.  To the extent that the total damages exceed the total applicable liability limits, the [UIM] coverage . . . is applicable to the difference.

¶7        Subsection (H) provides:

> Uninsured and underinsured motorist coverages are separate and distinct and apply to different accident situations.  [UIM] coverage shall not provide coverage for a claim against an uninsured

5

motorist in addition to any applicable uninsured motorist [(UM)] coverage. *If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident.* If the policy does not contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection, within thirty days after the insurer receives notice of an accident, the insurer shall notify the insured in writing of the insured's right to select one policy or coverage. For the purposes of this subsection, "insurer" includes every insurer within a group of insurers under a common management.

(Emphasis added.)

¶8        After receiving payment of the bodily injury liability limit under the Motorcycle Policy, Sabine Sharp did not claim UIM coverage under that policy, but rather only under the separate Escape Policy.  American Family argues that it properly denied that claim because, under Subsection (H), it may "preclude an insured from stacking coverages under multiple insurance policies," even when the coverage types differ.[1]  Relying on Subsection (H) and the Escape Policy's "Other Insurance" clause, American Family asserts that, "by seeking recovery under [the Motorcycle] policy, [Sharp's] recovery is limited to that policy."

---

[1]     The UMA does not use the terms "stacking" or "aggregation," and Arizona cases have not always used those terms consistently. In *Taylor*, however, we referred to Subsection (H)'s third sentence as "the anti-stacking provision" and, therefore, refer to it as such here.  198 Ariz. at 314 ¶ 9, 9 P.3d at 1053.

¶9    Sharp, however, contends that Subsection (G) entitles her "to fill the gap between her actual damages and the available liability recovery with the UIM coverage that she purchased separately for this purpose." Subsection (H), Sharp argues, only "permits insurers to prevent stacking of those first-party coverages (UM or UIM) addressed by § 20-259.01, where one insured has purchased the *same* first-party coverage on multiple vehicles from one insurer, either in a single policy, or multiple policies." Noting that she "is not attempting to 'stack' multiple UIM coverages," Sharp contends Subsection (H) does not apply when, as here, "two *different* coverages, under two different policies, purchased by two different individuals, [apply] to one loss." To the extent American Family's "Other Insurance" clause would preclude her UIM claim under the Escape Policy, Sharp argues, it violates the UMA.

## III.

¶10    The UMA's text alone does not resolve the parties' dispute. We must therefore attempt to glean and give effect to the legislature's intent, considering the statute's context, effects and consequences, and spirit and purpose. *See Ballesteros v. Am. Standard Ins. Co.*, 226 Ariz. 345, 347 ¶ 7, 248 P.3d 193, 195 (2011); *Hayes v. Cont'l Ins. Co.*, 178 Ariz.

7

264, 268, 872 P.2d 668, 672 (1994).[2]

¶11    This Court has previously found that "the legislature intended a broad application of UIM coverage to provide benefits up to the policy limits whenever the insured is not indemnified fully by the available limits of liability." *Taylor*, 198 Ariz. at 315 ¶ 15, 9 P.3d at 1054.  Similarly, we have said that Subsection (G) "explicitly entitles an insured to UIM coverage if the sum of the *limits of all applicable liability policies* is less than the *total damages* resulting from the accident." *Id.* at ¶ 14.

¶12    Subsection (H) is the only UMA provision that authorizes any limitation of UM or UIM coverage.  That subsection's first two sentences provide that those coverages "are separate and distinct," and that UIM coverage, either in one or several policies, cannot be applied to a claim against an uninsured motorist.  The anti-stacking provision in Subsection (H)'s third sentence permits an insurer to limit "the coverage" to "only one policy or coverage" when "multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim."  § 20-259.01(H).

¶13    American Family urges us to read "multiple policies or

---

[2]    Although a statute's "historical background" sometimes might illuminate legislative intent, *Hayes*, 178 Ariz. at 268, 872 P.2d at 672, the parties do not cite, nor have we found, any pertinent legislative history that bears on the issue presented here.

8

coverages" and "one policy or coverage" to mean *all* available coverages, regardless of type. But under that reading, an insurer could limit an insured's recovery for all accident-related damages to only one type of selected coverage, whether it be for medical payments, rental car reimbursement, property damage (under the collision coverage), liability, *or* UIM, regardless of the number of policies issued, coverages purchased, premiums paid, or vehicles covered. We find no indication in Subsection (H) or elsewhere that the legislature intended that result, particularly in light of the UMA's broad remedial purpose.

¶14     In addition, statutory terms must be construed in context. *See Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, 135 ¶ 34, 254 P.3d 367, 374 (2011). The only types of coverage addressed in the UMA, including Subsection (H), are UM and UIM.[3] Indeed, the purpose of the UMA is to regulate UM and UIM coverages specifically, not all coverages generally.

¶15     The most reasonable interpretation of Subsection (H)

---

[3]     We also note that the Escape Policy's "Other Insurance" clause on which American Family relies appears in the UM/UIM endorsement to the policy, rather than as a condition or limitation more generally applicable to other coverages or policy provisions. In so drafting its own policy, American Family appears to have contemplated that Subsection (H) would apply only to UM/UIM coverages rather than all available coverages.

is that the phrase "multiple policies or coverages" applies when an insured obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident. *Cf. Rashid v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (noting that under the UMA, stacking may be prohibited "when an insured has purchased multiple coverages from *one* insurer against the same event and seeks to stack the limits provided by any single coverage"). Subsection (H) authorizes an insurer in that situation to "limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident," thereby confining the insured to only one UIM policy or coverage. *See Taylor*, 198 Ariz. at 320 ¶ 28, 9 P.3d at 1059 (noting that Subsection (H) "allows the preclusion of stacking UIM coverages from separate *policies* purchased by the insured from the same insurer").

¶16    Subsection (H), however, does not permit an insurer to deny UIM coverage under a policy merely because the insured was partially indemnified as a claimant under the *liability* coverage of a different policy issued by the same insurer. *Cf. State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331, 897 P.2d 631, 633 (1995) (noting that Subsection (H) allows insurers to preclude insureds from recovering "from the *same* coverages under two or more policies" (emphasis added)). Under the

10

circumstances here, Subsection (G) requires an insurer to provide UIM coverage, "[t]o the extent that the total damages exceed the total applicable liability limits." Any policy provision to the contrary is void and unenforceable. *Cundiff*, 217 Ariz. at 360 ¶ 9, 174 P.3d at 272. The legislature, of course, may amend the law if it desires to permit the result American Family urges, "but it is not our place to rewrite the statute." *Ballesteros*, 226 Ariz. at 349 ¶ 17, 248 P.3d at 197.

## IV.

¶17    These conclusions comport not only with the terms of the UMA and its overarching purpose, but also with our case law. Although no prior decision directly controls the issue presented here, we have repeatedly recognized that liability insurance is distinct from first-party UIM coverage. *Taylor*, 198 Ariz. at 316 ¶ 16, 9 P.3d at 1055; *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 258, 782 P.2d 727, 734 (1989). "[T]he purpose of UM and UIM coverage is to enable the consumer to protect himself and family members against the possibility that, in any given accident, there will be no or insufficient liability coverage to compensate for the actual damages sustained." *Taylor*, 198 Ariz. at 316 ¶ 18, 9 P.3d at 1055. An insured who purchased coverage against two separate risks, each of which occurred, generally may recover under both coverages. *Id.* at ¶ 16.

¶18     The UMA has "a remedial purpose and must be construed liberally in favor of coverage, with strict and narrow construction given to offsets and exclusions."  *Id.* at 314 ¶ 11, 9 P.3d at 1053.  Although "[i]nsurers justifiably include other insurance clauses to prevent the insured from *duplicating* recovery," most courts have found that "insurers violate the public policy embodied in the UM/UIM statutes by inserting clauses that permit them to reduce or eliminate coverage when the victim/insured has not been fully compensated."  *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 328, 788 P.2d 56, 61 (1989); *cf. Rashid*, 163 Ariz. at 273, 787 P.2d at 1069 ("'A premium has been paid for each of the coverages . . . .  It seems both equitable and desirable to permit recovery under more than one coverage *until the claimant is fully indemnified*.'" (quoting 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 13.6, Comment at 403-04 (2d ed. 1987))).  American Family's proffered interpretation of Subsection (H) clashes with these established principles.

¶19     Contrary to American Family's argument, neither *Taylor* nor *Lindsey* supports a contrary conclusion.  *Taylor* held that an insured was "covered up to the face amount of the applicable UIM insurance, less any sums recovered under the liability coverage of the same policy," in order "to fill the gap between the amount she received from all applicable liability coverages and

12

her UIM coverage limits." 198 Ariz. at 312 ¶ 1, 321 ¶ 32, 9 P.3d at 1051, 1060. Unlike this case, *Taylor* involved an insured who sought both liability and UIM coverage under a policy that covered a single vehicle. *Id.* at ¶ 2. Here, in contrast, Sharp seeks UIM coverage under her Escape Policy, but received the liability payment under the separate Motorcycle Policy.[4]

¶20    In *Taylor*, this Court disagreed with the notion that "the legislature intended that an insured injured in her own car by another insured could be denied the UIM coverage she had purchased." 198 Ariz. at 315 ¶ 15, 9 P.3d at 1054. That point

---

[4]    Had Sharp claimed UIM coverage under the Motorcycle Policy, that claim would be barred because she recovered the full liability limit under that policy. *See Duran v. Hartford Ins. Co.* (*Duran I*), 160 Ariz. 223, 224, 772 P.2d 577, 578 (1989) (holding that injured passenger in one vehicle accident who recovered the full liability limit under the policy covering that vehicle could not "'stack' liability and UIM coverage [under the same policy] so as to, in effect, increase the named insured's liability coverage"); *cf. Taylor*, 198 Ariz. at 318-19 ¶¶ 25-26 & n.10, 9 P.3d at 1057-58 & n.10 (distinguishing *Duran I* and declining to re-examine that case when neither party had asked the Court to do so); *Demko v. State Farm Mut. Auto. Ins. Co.*, 204 Ariz. 497, 499, ¶ 11, 500 ¶ 16, 65 P.3d 446, 448, 449 (App. 2003) (upholding UIM exclusion in driver's policy when claimant/passenger received full liability payment under that same policy as well as full liability and UIM payments under claimant's own policies issued by same carrier, with court noting that UIM "is not intended to expand or extend the tortfeasor's liability insurance limits," and that claimant "received the full value of the coverage he purchased"). There is no occasion today to revisit either *Duran I* or *Taylor*, as neither case involved different coverages under multiple policies, applied Subsection (H), or otherwise supports American Family's argument.

is even more pronounced if, as occurred here, the UIM claimant is injured on a spouse's vehicle that is insured under its own policy, from which she received the liability limit, but no UIM coverage, and then seeks UIM coverage under a separate policy for which she paid a premium. "[J]ust as the insured should not receive more than he or she purchased, neither should he or she receive less." *Id.* at 319 ¶ 26, 9 P.3d at 1058. By claiming UIM coverage under the Escape Policy, from which she received no liability or other payment, Sharp is not seeking to duplicate recovery or receive more than she purchased.

¶21 *Lindsey* also does not help American Family. That case held that, although Subsection (H) generally authorizes insurers to prevent "stacking . . . [of] the same coverage under two or more policies," the carrier there "did not take the steps necessary to effectuate the limitation" authorized by that statute. 182 Ariz. at 331, 332, 897 P.2d at 633, 634. Because the policies were deficient in that regard, *Lindsey* did not address whether the anti-stacking provision applies to all types of coverages, or rather only like-kind UIM coverages.

¶22 In sum, neither *Taylor* nor *Lindsey* addressed whether Subsection (H) permits an insurer to preclude recovery of UIM benefits under a second policy (covering a separate, non-accident vehicle), based on the insured's recovery under the liability coverage of a different policy covering the accident

14

vehicle. Sharp's UIM claim is protected by the broad coverage requirement of Subsection (G), and it is not limited by Subsection (H)'s anti-stacking provision.[5] Accordingly, because Subsection (H) does not permit American Family to exclude Sharp's UIM claim under the Escape Policy, we need not address whether that policy's "Other Insurance" clause would otherwise comply with the statute. *Rashid*, 163 Ariz. at 275, 787 P.2d at 1071 ("[T]he exceptions permitted are those allowed by the statutes, not those insurers may put in the policy.").

**V.**

¶23 For the reasons above, we answer the first certified question in the affirmative and the second in the negative, and find it unnecessary to answer the third.

_____
A. John Pelander, Justice

CONCURRING:

---

[5] The parties also dispute whether, for Subsection (H) purposes, Sharp is "one insured" under both policies, and whether she "selected" the liability coverage under the Motorcycle Policy by suing her husband for negligence and then settling that tort claim. Because we conclude that Subsection (G) supports Sharp's UIM claim and that Subsection (H) does not authorize American Family's denial of that claim, we need not consider those arguments here.

15

_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
Robert M. Brutinel, Justice