IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

FRANK AND BETTINA GAMBRELL,
*Plaintiffs/Appellants,*

*v.*

IDS PROPERTY CASUALTY INSURANCE COMPANY,
*Defendant/Appellee.*

No. 2 CA-CV 2014-0147
Filed September 9, 2015

---

Appeal from the Superior Court in Pima County
No. C20124603
The Honorable Ted B. Borek, Judge
The Honorable D. Douglas Metcalf, Judge

**AFFIRMED**

---

COUNSEL

Goldberg & Osborne
By David J. Diamond and D. Greg Sakall, Tucson
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli, PLC
By Charles M. Callahan, Jennifer B. Anderson,
and Sean M. Moore, Phoenix
*Counsel for Defendant/Appellee*

---

## OPINION

Presiding Judge Miller authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Espinosa concurred.

---

M I L L E R, Presiding Judge:

¶1 Frank and Bettina Gambrell appeal from the trial court's orders granting summary judgment in favor of defendants IDS Property Casualty Insurance Company and Stacey Harrish and denying the Gambrells' motion for new trial. They contend the court erred by concluding A.R.S. § 20-259.01(C) permits insurers to exclude underinsured motorist coverage (UIM) when the insured is driving a large truck used in a business for transporting property. We affirm.

**Factual and Procedural Background**

¶2 The following facts are undisputed. In 2011, Frank Gambrell was driving a semi-tractor tanker, transporting milk for his employer, when another driver lost control of his vehicle and crashed into the tanker. For Frank's serious injuries, he received $15,000 from the other driver's insurance policy and $100,000 in UIM coverage from his employer's policy. He then sought an additional $100,000 from the UIM coverage of his personal automobile liability insurance policy provided by IDS. IDS denied Frank's claim, concluding the UIM coverage did not apply to him while driving the milk truck. The UIM clause contained in Frank's automobile policy provided:

> We will pay compensatory damages for bodily injury caused by accident which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle. We will pay those damages

2

for bodily injury an insured person suffers in a car accident while occupying a private passenger car or utility car, or as a pedestrian, subject to the limits of the policy.

"Utility car" was defined as one "not used in a business or occupation other than farming or ranching," "with a rated load capacity of 2,000 pounds or less of the pick-up, van or panel truck type." The Gambrells had not purchased a specific operator's policy for the milk truck.

¶3 The Gambrells' complaint against IDS alleged breach of contract and bad faith, and later added claims adjuster Harrish as a defendant.[1] The defendants filed a joint motion for summary judgment on the contract claim. The trial court granted the motion and dismissed the bad faith claim, concluding it was "intertwined" with the breach of contract claim.

¶4 The Gambrells filed a motion for new trial, restating the arguments made in their response to the motion for summary judgment.[2] The trial court denied the motion and this appeal followed. We review the denial of a motion for new trial for an abuse of discretion, but we review de novo a trial court's ruling on a motion for summary judgment. *Jackson v. Nationwide Mut. Ins. Co.*, 228 Ariz. 197, ¶ 8, 265 P.3d 379, 381 (App. 2011).

**Discussion**

¶5 The Uninsured Motorist Act generally requires insurers to make available UIM coverage in amounts not less than the bodily injury or death liability limits of a motor vehicle liability policy, and requires the insurer to include UIM coverage if requested by the

---

[1]Hereinafter, we refer to both defendants collectively as "IDS."

[2]Judge Borek, who had granted the motion for summary judgment, retired before the motion for new trial was filed. Judge Metcalf ruled on the motion for new trial.

insured.[3]   A.R.S. § 20-259.01(A), (B).   Subsection C, however, provides a permissive option:

> Any insurer writing automobile liability or motor vehicle liability policies may make available the coverages required by subsections A and B of this section to owners and operators of motor vehicles that are used as public or livery conveyances or rented to others or that are used in the business primarily to transport property or equipment.

The trial court held that subsection C meant that insurers need not offer or provide UIM coverage to owners or operators of commercial vehicles.[4]  The court concluded that Frank's policy lacked coverage of the milk tanker, and IDS did not breach its contract or act in bad faith in denying Frank's UIM claim.  The Gambrells argue, as they did below, that their personal automobile liability policy's UIM coverage covered Frank in any vehicle, including the milk truck; that subsection C creates only a limited exception applicable when a commercial vehicle owner or operator specifically seeks to insure that vehicle; and, in the alternative, that the policy language did not comply with the UIM statute.[5]

---

[3]Most provisions of the Act also apply to uninsured motorist coverage (UM).

[4]For purposes of this appeal, we will refer to "motor vehicles that are used as public or livery conveyances or rented to others or that are used in the business primarily to transport property or equipment" as referenced in § 20-259.01(C) as "commercial vehicles."

[5]The Gambrells' arguments interweave similar contentions, which we address in a linear manner for ease of understanding.

**Portability of UIM Coverage to a Commercial Vehicle**

¶6   The Gambrells first argue the UIM coverage they purchased for their personal automobiles was portable to the milk truck, based on the requirements of § 20-259.01 and case law interpreting it. Our supreme court has repeatedly interpreted subsection C as an exception to the general requirements of § 20-259.01. In *Calvert v. Farmers Insurance Company of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985), the court concluded a provision in the plaintiff's policy disallowing UM coverage when the insured was injured in his own uninsured motor vehicle[6] was an "other vehicle" exclusion that contravened the public policy of the statute. In doing so, the court noted,

> The only exception to the mandatory requirement of uninsured motorist protection[7] under the Act is contained in [former] A.R.S. § 20-259.01(D), which expressly excludes vehicles "used as public or livery conveyances or rented to others or which are used in the business primarily to transport property or equipment."

*Id.*; *see also Employers Mut. Cas. Co. v. McKeon*, 159 Ariz. 111, 113, 765 P.2d 513, 515 (1988) ("The statute only excepts public livery, rental, or commercial transportation vehicles from [the UM coverage offering] requirement.").

¶7   Additionally, this court addressed the Gambrells' primary argument more than thirty years ago when a taxi driver sought to claim UM coverage from his personal automobile insurer for an accident that occurred while he was driving his taxi. *Warfe v. Rocky Mountain Fire & Cas. Co.*, 121 Ariz. 262, 263, 589 P.2d 905, 906

---

[6]In *Calvert*, the insured was driving a motorcycle he owned but had failed to insure under the family automobile insurance policy. 144 Ariz. at 292-93, 697 P.2d at 685-86.

[7]UM coverage was mandatory until 1993. 1993 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 3.

(App. 1978). We found that the exclusion for vehicles used as a public conveyance found in the driver's personal automobile liability policy was valid because of subsection C. *Id.* at 264, 589 P.2d at 907.

**¶8** The Gambrells argue *Warfe* is distinguishable because it addressed UM coverage, not UIM coverage, but do not provide any support for this contention. Although UM and UIM coverage are "separate and distinct and apply to different accident situations," § 20-259.01(H), by its express terms subsection C applies to UM coverage described in subsection A and UIM coverage in subsection B, § 20-259.01(C). If the legislature had intended to exclude UIM coverage, it could have done so by eliminating the reference to subsection B. Gambrells' argument would require us to rewrite subsection C, which we cannot do. *See In re Estate of Bolton*, 233 Ariz. 584, ¶ 19, 315 P.3d 1241, 1246 (App. 2013).

**¶9** The Gambrells next argue *Warfe* must be overruled because the public policy behind § 20-259.01 changed in the 1980s. Specifically, the Gambrells argue UIM coverage is now "personal" and "portable," and therefore the UIM coverage they purchased under their personal liability policies covered Frank when he was driving the milk truck. They also note that pre-1980s cases interpreting § 20-259.01 have been overruled due to the shift in public policy.

**¶10** The Gambrells are correct that personal liability policies are "portable." The Arizona Supreme Court announced in *Calvert* that UM coverage is personal to the insured[8] and therefore portable, covering the insured "when in another automobile, when on foot, when on a bicycle or when sitting on a porch." 144 Ariz. at 296, 697 P.2d at 689; *see also Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 23, 770 P.2d 324, 327 (1989) (applying same portability to UIM

---

[8]UM and UIM coverage are defined as "first-party" insurance protecting the driver, in contrast with general liability insurance, which is "third-party" coverage. *See Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 23, 770 P.2d 324, 327 (1989); *Farmers Ins. Co. of Ariz. v. Young*, 195 Ariz. 22, ¶ 16, 985 P.2d 507, 512 (App. 1998).

coverage). UM and UIM coverage are triggered when the insured's bodily injury or death is caused by an uninsured or underinsured vehicle. *See* § 20-259.01(E) (defining "uninsured motorist coverage" as coverage for injury or death "if the motor vehicle that caused the bodily injury or death is not insured by a motor vehicle liability policy"); *see also Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 106-07, 859 P.2d 724, 729-30 (1993) (reviewing policy and holding physical contact with uninsured motor vehicle not required to trigger policy). Although the statute does not explicitly state that UIM coverage is personal and portable, the legislature has never explicitly addressed this interpretation, *see* § 20-259.01, and courts continue to rely on it, *see, e.g., Beaver v. Am. Family Mut. Ins. Co.*, 234 Ariz. 584, ¶ 11, 324 P.3d 870, 873 (App. 2014) (noting UIM coverage must be portable for person insured under policy, but limiting coverage to those insured under policy in first instance).

¶11 The Gambrells also accurately observe that several cases previously allowing UM or UIM policy exclusions have been overruled in favor of allowing portability of such insurance to other vehicles and situations. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 329, 788 P.2d 56, 62 (1989) (overruling one case); *Calvert*, 144 Ariz. at 297, 697 P.2d at 690 (overruling three cases). But the more recent cases have not directly affected the holding of *Warfe*. In recognizing the shift in public policy, courts relied on the presumption that the legislature would enumerate an exception if one was intended. *See Calvert*, 144 Ariz. at 294, 697 P.2d at 687; *see also McKeon*, 159 Ariz. at 113, 765 P.2d at 515 ("[E]numeration of exceptions in a statute creates a strong inference that the legislature intended no others."). Of particular importance, and as noted above, the *Calvert* court cited subsection C's commercial-vehicle exception as an example of an enumerated exception. 144 Ariz. at 294, 697 P.2d at 687; *see also McKeon*, 159 Ariz. at 113, 765 P.2d at 515. Because *Warfe* relied on the same subsection when it allowed the policy exclusion, there is no indication that the post-*Calvert* shift in

case law undermines the reasoning of *Warfe*.[9]  121 Ariz. at 263, 589 P.2d at 906.

¶12        The Gambrells also rely on a federal district court case analyzing Pennsylvania law to support their argument that their coverage was portable to the milk truck.  *Nationwide Mut. Ins. Co. v. Swisher*, 731 F. Supp. 691, 697 (E.D. Pa. 1989).  In the applicable statute in that case, however, UM coverage was generally mandatory, and could be rejected by a commercial driver only in writing.  *Id.*  Here, UIM coverage is generally not mandatory under § 20-259.01,[10] and need not be offered at all to a commercial vehicle operator.  We do not find the reasoning in *Swisher* applicable.

¶13        The Gambrells also contend subsection C does not allow an exclusion because our supreme court stated in 2012 that the anti-stacking provision in § 20-259.01(H) is the "only [Uninsured Motorist Act] provision that authorizes any limitation of UM or UIM coverage."  *See Am. Family Ins. Co. v. Sharp*, 229 Ariz. 487, ¶ 12, 277 P.3d 192, 196 (2012).  IDS argues the apparent conflict between *Sharp* and the language of the statute is because the exception in subsection C does not permit a policy "exclusion" or "limitation" on properly-purchased UIM coverage, but permits insurance companies to write policies that simply do not include commercial vehicle UIM coverage.  The trial court reached the same conclusion, finding, "I don't think you have the coverage under (c) unless it's provided for."  We agree.

¶14        First, *Sharp* addressed the anti-stacking provision, not the commercial vehicle provision, and noted in dicta that it was the

_____

[9]There have been no substantive alterations to subsection C since *Warfe*.  *Compare* 1972 Ariz. Sess. Laws, ch. 157, § 1, *with* 2003 Ariz. Sess. Laws, ch. 86, § 1.  Nonetheless, we recognize that either the legislature or our supreme court may extend portability principles to operators of commercial vehicles, but unless that occurs, *Warfe* controls.

[10]UM coverage is mandatory for certain commercial vehicles that transport passengers.  A.R.S. § 28-4033(A)(2).

only exception. *See id.* Further, there was no reference to subsection L, another clear exception to the requirement that insurers offer UM and UIM coverage. § 20-259.01(L).[11] But even assuming the anti-stacking provision is the only "limitation" allowed in the UM/UIM statute, the approach by the trial court and IDS—that the lack of commercial coverage is not an "exclusion" but merely a lack of purchased coverage—finds support in a case interpreting subsection L, *Petrusek v. Farmers Insurance Company of Arizona*, 193 Ariz. 552, 975 P.2d 142 (App. 1998).

**¶15**    In *Petrusek*, the court concluded it would not impute UIM coverage to a business automobile policy because the policy fit the requirements of subsection L.[12] *Id.* ¶¶ 9-11. The court did not refer to this gap in coverage as an exclusion; rather, because such coverage was not required, it would not be imputed to the policy. *Id.* Essentially, the policy lacked the coverage. Similarly, here, because subsection C treats UIM coverage differently for commercial vehicles, the Gambrells' policy would not cover the milk truck unless specifically requested and included. *See id.* ¶ 9. Because such an offering was not mandatory and there is no indication the Gambrells sought to insure the milk truck, coverage cannot be imputed.[13] *See id.*

---

[11] Subsection L provides an exception to the mandatory offering requirement for general commercial liability policies, excess policies, or other policies that do not provide primary motor vehicle insurance for a specifically insured motor vehicle. § 20-259.01(L).

[12] Although the court in *Petrusek* refers to subsection K, the operative language was moved to subsection L. *Compare Petrusek*, 193 Ariz. 552, ¶ 9, 975 P.2d at 144 (quoting former subsection K) *with* § 20-259.01(L).

[13] This does not alter our conclusion that *Warfe* controls, even though *Warfe* uses "exclusion" language, rather than referring to subsection C as an exception to the general rules of the statute.

**Applicability of the Commercial Vehicle Exception**

¶16 The Gambrells argue subsection C only applies when an insured specifically seeks an owner's or operator's policy on a commercial vehicle, and because they purchased their policy for their personal vehicles under subsection B, the language of subsection C did not apply. First, this conflicts with the holding in *Warfe*, as discussed earlier. *See* 121 Ariz. at 263, 589 P.2d at 906. Further, nothing in the language of subsection C indicates that it only applies when an insured seeks to specifically insure the commercial vehicle. § 20-259.01(C). The subsection simply states insurers may make coverage available "to owners and operators of motor vehicles that are used as public or livery conveyances or rented to others or that are used in the business primarily to transport property or equipment." *Id.* An operator is a person "in actual physical control of a motor vehicle," as Frank was. A.R.S. § 28-4001(6). That Frank only sought insurance from IDS for his personal vehicles does not change the fact that Frank was such an operator.[14] UIM coverage for ownership or operation of a commercial vehicle was not required to be included in their personal vehicle policy, and it was not included. The Gambrells lacked coverage for Frank's operation of the milk truck.

¶17 Additionally, under the Gambrells' interpretation, owners or operators could avoid the statute's enumerated exception by insuring their other vehicles. We acknowledge the general public policy behind UIM insurance is that it is portable and generally covers most injuries caused by underinsured drivers, including those that occur while the insured is in a vehicle he owned but failed to sufficiently insure. However, prior cases detailing that public policy did not concern commercial vehicles, which are treated differently under the statute. *See* § 20-259.01(A) through (C); *Higgins*, 160 Ariz. at 23, 770 P.2d at 327 ("other vehicle" exclusion void); *McKeon*, 159 Ariz. at 115, 765 P.2d at 517 (named driver exclusion void); *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 194, 731

---

[14]We note the Gambrells repeatedly state that Frank was "in" the milk truck. We limit our holding to the undisputed facts of this case, in which Frank was the driver of the commercial vehicle.

P.2d 84, 89 (1986) (offset provisions void); *Calvert*, 144 Ariz. at 294, 697 P.2d at 687 ("other vehicle" exclusion void). The Gambrells' argument to expand the reasoning of these cases to encompass commercial vehicles is unavailing, especially in view of the more directly applicable authority from *Warfe*.

**Validity of Policy Language**

¶18 The Gambrells argue in the alternative that even if § 20-259.01(C) applies, IDS was required to mirror the language of the statute to invoke the limitations in its policy. They rely on *State Farm Mutual Automobile Insurance Company v. Lindsey*, 182 Ariz. 329, 897 P.2d 631 (1995), a case in which our supreme court addressed the anti-stacking provision now found in § 20-259.01(H). Relying on previous case law that allowed for anti-stacking clauses in policies if the language is "'unambiguous and follow[s] the provisions'" of the statute, the court found the policy failed to effectuate the permissible limitation. *Id.* at 331-32, 897 P.2d at 633-34. Section 20-259.01(H) is unique, however, in that it requires the insurer to notify the insured about the limitations. Further, *Lindsey* involved a policy limitation, whereas the Gambrells' policy merely lacked non-mandatory coverage. The Gambrells also cite no case law imputing this mirrored-language requirement to subsection (C). Nothing in subsection (C) requires notice of a lack of UIM insurance, and the Gambrells do not argue the policy language was unclear or ambiguous. Because we find the lack of commercial vehicle coverage was permissible pursuant to § 20-259.01(C) and there is no requirement that IDS mirror the language of the statute in order to trigger the exception, the trial court did not err by granting summary judgment in favor of IDS. Further, because the Gambrells' motion for new trial restated their arguments in opposition to IDS's motion for summary judgment, the court did not err by denying the motion for new trial.

**Attorney Fees**

¶19 The Gambrells seek attorney fees pursuant to A.R.S. § 12-341.01. Because they are not the successful party on appeal, as required by § 12-341.01(A), we decline to award attorney fees.

## Disposition

¶20        For the foregoing reasons, we affirm.