IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE FARM AUTOMOBILE INSURANCE COMPANY,
*Plaintiff/Appellee,*

*v.*

JACEY LEE ORLANDO,
*Defendant/Appellant.*

No. CV-23-0228-PR
Filed May 29, 2025

Appeal from the Superior Court in Maricopa County
The Honorable Katherine M. Cooper, Judge
No. CV2020-006088
**AFFIRMED**

Opinion of the Court of Appeals, Division One
256 Ariz. 55 (App. 2023)
**VACATED**

COUNSEL:

David M. Bell, Christopher Robbins, Hill, Hall, Stark & Ferraro, PLC, Phoenix; and Lawrence A. Kasten (argued), Todd Feltus, Kory J. Koerperich, Lewis Roca Rothgerber Christie LLP, Phoenix, Attorneys for State Farm Mutual Automobile Insurance Company

Mick Levin (argued), Mick Levin, P.L.C., Phoenix, Attorney for Jacey Lee Orlando

Bennett Evan Cooper, Timothy M. Strong, Alexandra Crandall, Dickinson Wright PLLC, Phoenix, Attorneys for Amicus Curiae American Property Casualty Insurance Association

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorney for Amici Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

————————————

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BOLICK, BEENE, KING, and BRUTINEL (RETIRED) joined.*

JUSTICE MONTGOMERY, Opinion of the Court:

¶1          The Uninsured/Underinsured Motorist Act ("UMA") requires insurers selling motor vehicle liability policies to offer a policyholder ("insured") underinsured motorist ("UIM") coverage. A.R.S. § 20-259.01(B).   UIM coverage permits an insured to file a claim with her insurer to recover the difference between damages suffered in an accident and the amount paid by the at-fault motorist's liability policy.   § 20-259.01(G).   Here, we must determine whether Arizona law requires an insurer to provide coverage under a UIM policy for an accident involving an all-terrain vehicle ("ATV") that did not occur on a public road.

¶2          To make our determination, we must answer the threshold question of what constitutes a "motor vehicle" for the UMA to require coverage in the first instance.   This, in turn, requires us to consider Arizona's overall statutory framework for motor vehicle liability insurance, the relationship between the UMA and the Financial Responsibility Act ("FRA"), A.R.S. §§ 28-4001 to -4153, and the relevant provisions thereof.   Ultimately, we hold that the UMA does not require coverage for ATVs not operated on public roads and that an insurer may preclude such coverage in a UIM policy.

_____

*   Although Justice Brutinel retired prior to the issuance of this Opinion, he participated in the decision of the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3          Jacey Lee Orlando was a passenger in an ATV when it overturned in California's Imperial Sand Dunes, seriously injuring her leg.   The driver's insurer paid Orlando the liability policy limit, which was insufficient to cover the extent of her injuries.   Orlando then filed a claim with her insurer, State Farm, under her UIM policy (the "Policy").

¶4          State Farm denied coverage, explaining that the ATV was not an "underinsured motor vehicle" under the Policy:

> *Underinsured Motor Vehicle* does not include a land motor vehicle:
>
>      . . . .
> 2. designed for use primarily off public roads except while on public roads[.]
>
>      . . . .
> *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The bodily injury must be:
> 1.   sustained by an *insured*; and
> 2.   caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

Notwithstanding the coverage determination, State Farm invited Orlando to provide information supporting an alternative conclusion.   After receiving no response, State Farm filed suit to obtain a declaratory judgment that the Policy did not provide UIM coverage for the ATV accident.   Orlando counterclaimed for breach of contract, alleging that State Farm's denial of coverage breached the Policy.[1]

---

[1]   Orlando also counterclaimed for insurance bad faith.   The superior court granted summary judgment in favor of State Farm on that claim, which the court of appeals affirmed.   Orlando did not petition this Court to review the bad faith claim so we do not address it.

**¶5**        State Farm moved for summary judgment, claiming that the ATV did not meet the Policy's definition of an "underinsured motor vehicle." Additionally, State Farm asserted that the exclusion was "nearly identical" to exclusions approved of in *Chase v. State Farm Mutual Automobile Insurance Co.*, 131 Ariz. 461 (App. 1982), and *West American Insurance Co. v. Pirro*, 167 Ariz. 437 (App. 1990), which concerned uninsured motorist ("UM") coverage. Therefore, State Farm also concluded that the Policy was not statutorily required to provide UIM coverage for the accident.

**¶6**        Orlando opposed the motion, asserting that State Farm's reliance on *Chase* and *Pirro*, which addressed UM coverage, was misplaced because this matter involves UIM coverage. In support of her argument distinguishing UM and UIM coverage, Orlando noted that under § 20-259.01(H): "[UM] and [UIM] coverages are separate and distinct and apply to different accident situations." Finally, according to Orlando, the Policy could not limit UIM coverage because "exceptions to [UIM] coverage not permitted by [statute] are void," *Am. Fam. Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 488 ¶ 1 (2012) (first alteration in original) (quoting *Taylor v. Travelers Indem. Co.*, 198 Ariz. 310, 315 ¶ 13 (2000)), and thus the exclusion was precluded by public policy, *see State Farm Mut. Auto. Ins. Co. v. Duran*, 163 Ariz. 1, 3–4 (1989).

**¶7**        The superior court granted State Farm's motion, concluding that the ATV was not an "underinsured motor vehicle" under the Policy because it was "designed for use primarily off public roads" and the accident did not occur on a public road. The court also relied on *Chase* and *Pirro* to find that the UMA did not bar the Policy's limitation of UIM coverage. Orlando moved for a new trial, arguing that the cases relied on by the superior court addressed UM, not UIM, coverage and were therefore inapplicable. The court denied the motion.

**¶8**        Orlando appealed, and the court of appeals reversed. The court concluded that the UIM provision of the UMA did not permit excluding coverage for the ATV accident. *State Farm Auto. Ins. Co. v. Orlando*, 256 Ariz. 55, 63 ¶ 20 (App. 2023). The court's rationale rested on unambiguous and "notable differences" between the text of the UM and UIM provisions. *Id.* at 58–59 ¶ 10, 60 ¶ 15.

Specifically, the court observed that: (1) UM coverage is "subject to the terms and conditions of that coverage," whereas UIM coverage contains no such limitation; and (2) UM coverage applies where a "motor vehicle" caused injury or death, but UIM coverage covers injuries "resulting from [an] accident" without referencing a motor vehicle. *Id.* at 59 ¶ 10 (alteration in original) (quoting § 20-259.01(E), (G)). The court further concluded that prior cases permitting UM coverage exclusions by reference to the FRA setting forth the requirements for motorist liability coverage did not apply to this case. *Id.* at 60 ¶ 15.

¶9 We granted State Farm's petition for review to determine whether the UMA requires insurers to provide UIM coverage for accidents involving vehicles designed primarily for off-road use and that do not occur on public roads. The applicability of UIM coverage is an issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶10 We review de novo a grant of summary judgment, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion. *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 284 ¶ 16 (2023). We also review questions of statutory interpretation de novo. *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 12 ¶ 22 (2022). And we read words in statutes in context to determine their meaning. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Id.*

¶11 The facts relevant to our determination are not in dispute. Furthermore, it is undisputed that under the plain language of the Policy, Orlando is not entitled to UIM coverage. Instead, the parties dispute whether the Policy exclusion violates the UMA. State Farm argues that the textual distinctions between the UM and UIM provisions are irrelevant because the predicate circumstance for either type of coverage is an accident with a motor

vehicle. State Farm thus contends that we must resolve this case by reading the UMA *in pari materia* with the FRA to ascertain the relevant definition of "motor vehicle," which State Farm asserts does not encompass an off-road vehicle operated off public roads.

¶12 Conversely, Orlando argues that because the UIM provision of the UMA does not expressly permit the Policy exclusion, it is invalid. Therefore, according to Orlando, the UMA and FRA cannot be read *in pari materia* to limit UIM coverage to motor vehicles as defined by the FRA. Orlando further asserts that, as noted in § 20-259.01(H), UM and UIM coverages are "separate and distinct," precluding the application of *Chase* and *Pirro*.

¶13 As the parties' arguments demonstrate, the relationship between the FRA and UMA informs our analysis. We therefore begin by reviewing the statutory framework for motor vehicle liability coverage.

**A. Arizona's Motor Vehicle Insurance Framework**

¶14 In 1951, the legislature adopted the FRA to require minimum liability coverage for operators or owners of motor vehicles operating on public roads in Arizona. *See* 1951 Ariz. Sess. Laws ch. 122 (1st Reg. Sess.); § 28-4135(A). [2] We have long recognized that the primary purpose of the FRA is "the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons." *Schecter v. Killingsworth*, 93 Ariz. 273, 280 (1963); *see also State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 253 (1989) (same). Because "many automobile owners [still] failed to purchase insurance" despite the FRA's requirements, in 1965 the legislature enacted the UMA, now codified at § 20-259.01. *See Wilson*, 162 Ariz. at 253. The UMA required insurers to "provide coverage for injuries resulting from accidents with uninsured or unknown vehicles." *Id.*; *see also* 1965 Ariz. Sess. Laws ch. 34 (1st Reg. Sess.).

---

[2] Although now known as the Safety Responsibility Act, we utilize FRA for ease of reference.

**¶15** Due to "perceived inadequacies in UM insurance," the legislature further amended the UMA in 1981 to require insurers to offer UIM coverage for accidents in which damages for bodily injury or death exceed applicable policy limits. *Wilson*, 162 Ariz. at 253–54; *see also* 1981 Ariz. Sess. Laws ch. 224 (1st Reg. Sess.). Thus, over time, UM and UIM coverage have functioned as "'gap fillers' permitting insureds to provide themselves with a source of compensation for bodily injuries sustained as a result of the negligence of a financially irresponsible or inadequately insured driver." *Wilson*, 162 Ariz. at 255. And because the UMA functions as a gap filler for the FRA with the same policy considerations, the UMA's scope of coverage—whether UM or UIM—must be coextensive with what the FRA requires. *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 104 (1993) ("The purpose of § 20–259.01 is, broadly speaking, to 'close the gap in protection under the [FRA] . . . and protect people who are injured by financially irresponsible motorists." (cleaned up)); *see also Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 327 n.6 (1989) (noting that UM and UIM coverage share the same policy considerations). Otherwise, the UMA would operate to expand coverage beyond what the FRA requires.

**¶16** Thus, in the matter before us, the UMA would only require State Farm to provide coverage under Orlando's UIM policy if the ATV is a "motor vehicle" that the FRA requires to be insured. Consequently, the arguments raised by Orlando—and the court of appeals' related analysis—regarding textual distinctions between the UM and UIM coverage provisions and what the UMA requires, which assume the UMA applies, are irrelevant to deciding whether

the UMA requires UIM coverage in the first instance.[3]

## B. Relevant Provisions Of The UMA

**¶17**            In addition to the nature of the UMA as a gap filler for the FRA, the relevant provisions of the UMA make it clear that it applies to accidents with motor vehicles.

**¶18**            The UMA requires insurers to offer UM and UIM coverage to insureds. *See* § 20-259.01(A), (B). [4]            Under subsection (E), UM coverage provides "coverage for damages due to bodily injury or death if the *motor vehicle* that caused the bodily injury or death is not insured by a *motor vehicle* liability policy." (Emphasis added.)   Thus, UM coverage is expressly addressed to circumstances involving motor vehicles.

**¶19**            UIM coverage, pursuant to subsection (G), provides "coverage for a person if the sum of the limits of liability under all . . . liability insurance policies applicable at the time of the accident is less than the total damages . . . resulting from the accident."   The liability insurance policies applicable to an accident

---

[3]   This does not mean the UM and UIM provisions are irrelevant for addressing coverage issues.   *See Sharp*, 229 Ariz. at 491–92 ¶ 16 (emphasis in original) (prohibiting insurers from denying "UIM coverage under a policy merely because the insured was partially indemnified as a claimant under the *liability* coverage of a different policy issued by the same insurer"); *Brown*, 163 Ariz. at 329 ("We hold State Farm's UIM excess/escape clause and prorata (sic) limit reduction clause violate the public policy embodied in A.R.S. § 20–259.01 (UIM statute) if applied so as to obviate or reduce the UIM coverage available to Brown for her actual damages."); *Calvert v. Farmers Ins. Co. of Ariz.*, 144 Ariz. 291, 297 (1985) ("We hold that the exclusion denying coverage to an insured injured by an uninsured motorist while the insured is occupying a vehicle owned by the insured but not listed in the policy is invalid as being contrary to the coverage mandated by A.R.S. § 20–259.01.").

[4]   Currently, insurers are only mandated to offer UM and UIM coverage.   § 20-259.01(A), (B).   Insureds are not required to purchase such coverage.   *Id.*

are necessarily motor vehicle liability policies. Otherwise, a UIM policyholder injured in any type of accident—even a slip and fall in a convenience store—could make a UIM claim where applicable liability insurance policies did not cover the total damages suffered. This would render UIM coverage indistinguishable from general accident insurance, covering harm from accidents regardless of whether they involved a motorist or motor vehicle. We will not read the UMA to permit such an absurd result. *See France v. Indus. Comm'n*, 250 Ariz. 487, 490 ¶ 13 (2021) (declining to read "a statute in a manner that leads to an absurd result").

¶20 The UMA's definitional provisions are also consistent with our conclusion that the UMA applies to accidents with motor vehicles. Subsection (D) defines an uninsured motor vehicle to include "any insured *motor vehicle* if the liability insurer of the vehicle is unable to make payment on the liability of its insured, within the limits of the coverage, because of insolvency."[5] (Emphasis added.) Likewise, subsection (F) provides that any payment under the applicable policy "insuring the *motor vehicle* that caused bodily injury or death" equal to or less than the applicable policy limits will preclude payment under UM coverage. (Emphasis added.)

¶21 Next, subsection (H) provides that "[UM] and [UIM] coverages are separate and distinct and apply to different accident situations," and limits an insured's ability to recover under both UM and UIM coverage in certain circumstances. The phrase "different accident situations" necessarily references the circumstances in which the accident is with either an uninsured or underinsured motorist. Finally, in the event of a claim under UM or UIM coverage for an accident with "an unidentified *motor vehicle*," the UMA requires that "the insured shall provide corroboration that the unidentified *motor vehicle* caused the accident." § 20-259.01(M) (emphasis added); *see also Brown*, 163 Ariz. at 327 (determining that "A.R.S. § 20–259.01 should be construed to require indemnification of victims of accidents with uninsured or underinsured motorists").

---

[5] This definition, though, only addresses the insurance status of a motor vehicle. It fails to aid in determining what actually constitutes a motor vehicle.

**¶22** Despite the frequent references, the UMA itself does not define "motor vehicle." The FRA, however, does. But whether the FRA's definition of motor vehicle informs our determination of coverage for an ATV accident under the UMA depends on whether we consider the FRA and UMA *in pari materia*.

## C. Applicability Of The *In Pari Materia* Doctrine

**¶23** This Court reads statutes "of the same subject or general purpose" *in pari materia*. *Stambaugh*, 242 Ariz. at 509 ¶ 7; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) (discussing the related-statutes canon). Relying on *Chase* and *Pirro*, State Farm argues that the UMA should be read *in pari materia* with the FRA. Orlando disputes the propriety of an *in pari materia* review based on *Employers Mutual Casualty Co. v. McKeon*, 159 Ariz. 111 (1988), and *St. Paul Fire & Marine Insurance Co. v. Gilmore*, 168 Ariz. 159 (1991), two decisions in which this Court declined to read the FRA and UMA together.

**¶24** At the outset, Orlando's reliance on *McKeon* and *Gilmore* is misplaced for two reasons. First, at the time this Court decided each case, we did not utilize the *in pari materia* doctrine or other "venerable doctrines of judicial construction" absent ambiguity. *McKeon*, 159 Ariz. at 114; *see also Gilmore*, 168 Ariz. at 164 n.6. This Court's more recent decisions make clear, though, that *in pari materia* is a primary tool of interpretation and ambiguity is not a prerequisite to applying it. *See, e.g.*, *San Diego Gas & Elec. Co. v. Ariz. Dep't of Revenue*, 562 P.3d 879, 882 ¶ 11 (Ariz. 2025) (noting use of *in pari materia* without referencing ambiguity); *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (using *in pari materia* review *before* determining statutory language ambiguous and examining "secondary interpretation methods"); *Stambaugh*, 242 Ariz. at 510 ¶ 9 (considering statutory language "in relation to the statutory scheme" at the outset to conclude no ambiguity existed); *see also* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2144–63 (2016) (reviewing Robert A. Katzmann, *Judging Statutes* (2014)) (arguing that employing agreed-upon semantic canons for statutory interpretation can limit instances of ambiguity in the first place).

**¶25** Second, *McKeon* and *Gilmore* are inapposite to the matter before us. In *McKeon*, this Court addressed "whether Arizona law permits the exclusion of mandatory [UM] coverage by contractual arrangement." 159 Ariz. at 113. The *McKeon* Court declined to read the FRA and UMA together, referencing the fact that the FRA predated the passage of the UM provision, which addressed a more specific set of circumstances. *Id.* at 114. The Court further reasoned that the statutes had differing purposes concerning insurance coverage and concluded that "an exclusion [permitted] under [the FRA] does not require a similar result for [UM] protection." *Id.* Accordingly, "*in pari materia* [did] not fit the statutory framework." *Id.*

**¶26** Indeed, under the circumstances in *McKeon*, the general/specific canon directs that the more recent and specific UM provision mandating coverage applies over the more general FRA provision permitting exclusion from coverage.[6] *See State v. Jones*, 235 Ariz. 501, 503 ¶ 8 (2014) (discussing the general/specific canon and noting that "[w]hen 'two conflicting statutes cannot operate contemporaneously, the more recent, specific statute governs over an older, more general statute'" (quoting *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 333 ¶ 29 (2001))); *see also* Scalia & Garner, *supra* ¶ 23, at 183 (discussing the general/specific canon). Thus, although the FRA and UMA addressed motor vehicle liability policies, the *in pari materia* doctrine was irrelevant to determining the specific coverage matter at issue. In contrast, the matter before us does not involve competing coverage provisions in the FRA and UMA. Instead, it involves discerning the applicable definition of a motor vehicle to determine whether UIM coverage is required in the first place.

**¶27** In *Gilmore*, this Court considered whether an endorsement for automobile liability coverage in a comprehensive general liability insurance policy was "an 'automobile liability or

---

[6] At that time, the FRA permitted an insured and an insurer in a liability policy to agree in writing to exclude as an insured any named person when operating a motor vehicle. *McKeon*, 159 Ariz. at 113 n.4. Also, the UMA required an insurer to provide a minimum level of UM coverage for insureds. *Id.* n.3.

motor vehicle liability' policy so that the insurer is required by the UMA to offer [UIM] coverage." 168 Ariz. at 161. The insurer argued that the UMA and FRA must be read together such that the UMA only applies to "motor vehicle liability policies defined in and issued pursuant to the [FRA]." *Id.* at 164.

¶28 The *Gilmore* Court declined to read the FRA and UMA together because the FRA's definition of a motor vehicle liability policy was explicitly limited in application by the legislature, precluding its application to the UMA. *Id.* at 164. Additionally, the *Gilmore* Court found that another statutory provision was applicable. *Id.* at 165. Accordingly, there was no basis for reading the two statutes together in the first place. Moreover, the issue in *Gilmore* addressed the types of insurance policies that trigger the requirement to offer UM coverage under the UMA, which is not the issue before us. Lastly, neither *McKeon* nor *Gilmore* relied on the "subject to" language to hold that UM coverage did not apply. In other words, not *qualifying* for UM coverage under the UMA was not considered an *exception* to UM coverage. Thus, neither *McKeon* nor *Gilmore* precludes us from reading the FRA and UMA together.

¶29 As discussed, the UMA was enacted and amended to fill gaps in the FRA's motor vehicle liability coverage requirement and operates together with the FRA in a congruent regulatory scheme. *Stambaugh*, 242 Ariz. at 509 ¶ 7; *see also Chase*, 131 Ariz. at 463 (noting that "[t]he UMA was intended to close the gap in protection offered by the [FRA]"). Hence, the UMA and FRA are statutes "of the same subject or general purpose." *See Stambaugh*, 242 Ariz. at 509 ¶ 7. Therefore, we will read the UMA and FRA *in pari materia* to determine whether UIM coverage is required under the UMA and next turn to consider the FRA's definition of a motor vehicle.

**D. The FRA Definition Of Motor Vehicle**

¶30 The FRA defines a motor vehicle in the context of establishing the scope of mandatory motor vehicle liability coverage. According to the FRA, "'[m]otor vehicle' means a self-propelled vehicle that is registered or required to be registered under the laws of this state." A.R.S. § 28-4001(3). And under the FRA, "[a] motor

vehicle that is operated on a highway in this state" must be sufficiently insured.  § 28-4135(A).

**¶31**        However, the insurance requirement "does not apply to the owner or operator of any: All-terrain vehicle or off-road recreational motor vehicle operating on a dirt road that is located in an unincorporated area of this state."  § 28-4132(9).  Furthermore, an ATV is not required to be registered under Arizona law when not operating on a public highway.  A.R.S. § 28-2153(D)(9), (D)(11); *see also* A.R.S. § 28-1171(6)(b) (defining an ATV as an "off-highway vehicle").  The FRA also exempts ATVs operating on unpaved roads not maintained by any state or municipal entity in unincorporated areas of Arizona.  § 28-4132(9).

**¶32**        Thus, under the FRA, a motor vehicle is "a self-propelled vehicle" that is "operated on a highway" and does not include an "[a]ll-terrain vehicle or off-road recreational motor vehicle operating" off-road.

**E. The FRA Definition And UIM Coverage**

**¶33**        Because we conclude any textual differences between the UMA's provisions concerning UM and UIM coverage are irrelevant to our analysis, we disagree with Orlando and the court of appeals that *Chase* and *Pirro* are distinguishable and inapplicable to this case.  Instead, we find that *Chase* and *Pirro* illustrate the application of the FRA's definition of a motor vehicle to determining coverage under the UMA.

**¶34**        In *Chase*, the court considered whether an automobile liability policy's exclusion of UM coverage for "injuries suffered off the public roads caused by off-road vehicles" violated the UMA. 131 Ariz. at 462.  Chase had been standing inside a garage when a golf cart "crashed into, and partially through, the garage door, striking" and injuring him.  *Id.*

**¶35**        Reading the UMA and FRA *in pari materia*, the court first considered whether the FRA required coverage for the off-road vehicle involved in the accident.  *Id.* at 464–65.  Given the shared purpose and a "close reading" of both the FRA and UMA, the court

concluded the FRA was "silent as to any requirement that insurance policies obtained to provide proof of financial responsibility also cover off-road accidents." *Id.* at 465.

¶36 The court, adopting the reasoning promulgated in other jurisdictions, concluded that what constitutes a "motor vehicle" for purposes of the UMA turns on two considerations: (1) whether the vehicle at issue is required to be insured under the FRA; and (2) whether the accident at issue took place on a public highway. *Id.* at 466–68. Accordingly, for purposes of the UMA, it defined "motor vehicle" as including (1) vehicles required to be insured by the FRA, and (2) vehicles not required to be insured by the FRA that are being operated on public roads when the accident at issue occurs. *Id.* at 468. Applying this definition, the court concluded that "[UM] coverage for operation of a golf cart resulting in an accident off the public highway is neither required nor prohibited by the Arizona UMA" and, therefore, the "exclusion of such off-road accidents" from UM coverage "is a matter of contract" and does not "conflict with the mandates" of the UMA or FRA. *Id.*

¶37 In *Pirro*, the insured was killed in an off-road accident involving an unregistered dune buggy/sandrail that was designed mainly for use off public roads. 167 Ariz. at 437–38. The policy in question included an exclusion for an uninsured motor vehicle "[d]esigned mainly for use off public roads while not on public roads." *Id.* at 438. The court cited to *Chase* in support of its conclusion:

> [L]iability insurance need only cover motor vehicles *operated on highways* and, since uninsured motorist coverage is intended to provide the reciprocal or mutual equivalent of automobile liability coverage under the [FRA] and automobiles that are not intended to be operated on the highways need not be covered by liability insurance, it follows that excluding such vehicles from uninsured motorist coverage does not violate the public policy of the State of Arizona.

*Id.* (emphasis in original).

14

¶38          Applying the FRA definition of motor vehicle, we hold that UIM coverage of an off-road ATV accident is neither required nor prohibited under the UMA.   UIM coverage in such a circumstance is a matter of contract.   Therefore, the Policy's definition of "underinsured motor vehicle," resulting in preclusion of UIM coverage, is permissible under Arizona law.

**CONCLUSION**

¶39          For the reasons stated, we vacate ¶¶ 10–20 of the court of appeals' opinion and that portion of ¶ 33 addressing summary judgment on the breach of contract claim.   We affirm the superior court's entry of summary judgment in favor of State Farm.   At oral argument, State Farm acknowledged the good faith arguments made by Orlando and that it would be an appropriate exercise of our discretion to decline to award attorney fees should it prevail.   *See* A.R.S. § 12-341.01.   We agree, and therefore deny State Farm's request for attorney fees.